### CLARK v. UNITED STATES.

District Court, E. D. Kentucky.

Feb. 17, 1931.

Perry B. Miller, of Louisville, Ky., for plaintiff.

Sawyer A. Smith, U. S. Atty., of Covington, Ky., and George R. Brown, Jr., Regional Atty., for the Bureau of Louisville, Ky., for the United States.

ANDREW M. J. COCHRAN, District Judge.

This cause is before me on final hearing. It is an action by a World War Veteran on a war risk insurance policy. The plaintiff was inducted into the service May 27, 1918, and honorably discharged May 17, 1919. He went overseas in August, 1918, and was in the Meuse-Argonne offensive. His policy was issued June 3, 1918. The claim is that it matured by his becoming totally and permanently disabled prior to August 1, 1919, at which time it would otherwise have lapsed by the nonpayment of premiums. The claim is that such disability was brought about by tuberculosis incurred whilst in the service.

When he entered the service he was a little over twenty-two years old and stout and healthy. The defendant's witness Walker testified that he then "looked very strong." Whilst in battle on October 6, 1918, he was gassed, and again October 20, 1918, he was shocked by the explosion of a shell. The effect of neither was to put him out of action. The gassing weakened him and affected somewhat his ability to walk for some time. The shock rendered him unconscious for over an hour, possibly as much as three or four. Seemingly from this time he suffered from a weak back. His testimony as to these experiences in battle is corroborated by that of two comrades. When discharged he had a cough which began whilst in service and shortly after he was gassed and continued ever since. It is described as a bad cough, a hacking cough, or a dry hacking cough. His back was weak. He had pains in his throat and breast and shortness of breath. He looked different, not healthy, did not seem in as good physical condition as before, his complexion was sallow, and did not have rosy cheeks as before. A physician of standing in the community where he lived, who had known him since 1906, not his family doctor, testified that he saw plaintiff a week or two after his return and he appeared to be suffering from tuberculosis, and that he saw him often afterwards and examined him in 1923; that from the time he first saw him his condition gradually got worse; every time he saw him he was a little bit worse; and that when he so examined him he was then suffering from active pulmonary tuberculosis, and that in his opinion he was thus afflicted when he came back from the army. Shortly after his return he began to work at coal mining under his brother and continued to do so for something like two and one-half months. His work was shooting and loading slate. Whilst at work he would snatch rest every now and then. He quit because he was unable to continue. He then went to shoveling coal into trucks for a wagon mine. This was in the fall of 1919, and he continued at this until spring of 1920. Coal was then selling at exorbitant prices and even the wagon mines were in their glory. He was paid 40 cents an hour. He quit because his back gave way. He then, May or June, 1920, worked as a section man on the Southern Railway, carrying fish and joint plates, shoveling slag and tamping poles for two weeks, when he was discharged because he could not do the work. Apart from gardening work, he does not seem to have worked any after this.

On October 29, 1920, he applied for compensation under the war risk legislation and was thereafter examined by the Veteran's Bureau on different occasions. Such examination was had November 16, 1920, and it was diagnosed that he had chronic bronchitis. The subsequent examinations and diagnoses were as follows: August 12, 1921, chronic quiescent pulmonary tuberculosis, moderately advanced; February 9, 1922, chronic pulmonary tuberculosis; August 24, 1922, chronic pulmonary tuberculosis, and valvular heart disease, mitral insufficiency; October 17, 1923, chronic pulmonary tuberculosis arrested; and January 11, 1924, chronic pulmonary tuberculosis moderately advanced. As a result of the previous examinations, compensation was allowed him $20 per month from December 13, 1920; $40 per month from August 12, 1921; and $80 from February 9, 1922. The latter amount was on account of total disability based no doubt on the examination of that date. Thereafter in that year he married, and on May 1, 1923, his wife gave birth to a child, and the allowance was increased from that date to $95 per month. June 29, 1924, possibly as a result of the examinations of October 17, 1923, and January 11, 1924, the allowance was reduced to $71.25 per month. Some time prior to August 28, 1924, the tuberculosis, evidently from his lungs, attacked his spine and involved the seventh and eighth and upper part of the ninth vertebræ. Because of this he was

sent to the Veteran's Hospital at Dawson Springs, Ky., and remained there until November 15, 1925, nearly fifteen months. On September 6, 1924, shortly after his arrival, he was examined and it was diagnosed that he had pulmonary tuberculosis far advanced and that his spine was affected as above stated, such affection being known as Pott's disease, and October 10th his compensation was restored to $95 per month dating from time of his entry. He was placed in a plaster of paris cast and remained there for possibly as much as six months. When it was removed there was a big lump on his spine. This was opened—pumped out and sealed up—and openings were made in other places for five consecutive times. He was then put in a straight-jacket, which he wore about six and a half months whilst there and a right smart little bit after his discharge from the hospital. On September 20, 1925, shortly before his discharge from the hospital, he was examined again, and this diagnosis was chronic pulmonary tuberculosis far advanced and tuberculosis of the spine. On his discharge he was given a letter of instructions by the director of Red Cross service at the hospital and the medical officer in charge, and in that letter they stated to him that he had "a serious case of tuberculosis." The straight-jacket which he had hurt him and the Bureau built another one for him. In 1926, whilst he was wearing this jacket and was engaged in chopping wood, because of the jacket a piece of wood struck him in the right eye, putting it out and causing total blindness in that eye.

Subsequent to his discharge from the hospital he was again examined by the Bureau on four occasions. The dates of examination and the diagnosis then made were as follows: April 5, 1926, Pott's disease, old and pulmonary tuberculosis, advanced A, inactive; April 27, 1927, pulmonary tuberculosis, arrested, and Pott's disease, old and healed; November 3, 1927, pulmonary tuberculosis, minimum arrested, and Pott's disease, old and healed; and December 4, 1927, no tuberculosis found and Pott's disease healed.

It would seem that as a result of these later examinations his compensation was reduced to $50 a month, which he is now receiving. Just when this reduction was made I am not advised.

■ Considering the case as thus made out by the evidence, I am driven to the conclusion that at the time of plaintiff's discharge, and before the arrival of the time when his policy would elapse by the nonpayment of premiums, he had become totally and permanently disabled by reason of the presence of tuberculosis in his system which matured his policy. Much is made of the fact that in his discharge it is stated that at that time his physical condition was good to which he gave consent by subscribing his name thereto. But the examination was more or less superficial, and it is not unlikely that he did not realize the serious condition in which he then was. Evidently on his return he went on the idea that he was physically able to work, for he made three efforts at it, which brought home to him the fact that he was not. The attractive wage which the wagon mine operator was able to pay him out of his large profits kept him longer at work on this job than on the others. When he realized that he would have to quit, he applied for compensation, and based on its examinations the Bureau awarded his compensation on the basis of total disability. It is urged that the result of these examinations was not admissible in evidence, but I cannot conceive of any reason why it was not. To me they seem the best possible evidence of his condition during the time covered by them. According to them the Pott's disease in his spine had been cured and the tuberculosis in his lungs had been arrested. But it would be unsafe for him to attempt to follow any gainful occupation which he is adapted to follow. It might bring back on him the disease in an active form. The examinations of October 17, 1923, and January 11, 1924, showed that his pulmonary tuberculosis was then "arrested" or "apparently arrested." But it was not long thereafter before it reappeared and attacked his back in a rather virulent form.

He is not able to follow continuously any substantially gainful occupation, and such has been his condition before and ever since his discharge from the army.

The plaintiff is entitled to judgment.