**NICHOLS v. UNITED STATES.**

District Court, E. D. Kentucky.
Feb. 19, 1931.

294

Perry B. Miller, of Louisville, Ky., for plaintiff.

Sawyer A. Smith, U. S. Atty., of Covington, Ky., and George R. Brown, Jr., Regional Atty., U. S. Veterans' Bureau, of Louisville, Ky., for the United States.

ANDREW M. J. COCHRAN, District Judge.

This cause is before me on final hearing. It is an action by a World War veteran on a war risk insurance policy. The plaintiff enlisted June 21, 1916, and was discharged May 29, 1919. His policy was issued February 8, 1918. The premium was paid until his discharge. The claim in the petition is that at that time he was totally and permanently disabled because of gastritis, pulmonary tuberculosis, rectal abscess, and general disability, and that by reason thereof the policy then matured and did not thereafter lapse by failure to pay the premiums. It is to be borne distinctly in mind that the primary question in this case, as in all like cases, is whether plaintiff was then so disabled. Subsequent disability has no relevancy except in its bearing on the then disability and on the right to payment of subsequent instalments of insurance.

The plaintiff was a painter and decorator before his enlistment and went overseas; when and what he did after so doing not appearing. He testified that whilst in training he suffered stomach or bowel trouble; that after he went overseas in the latter part of 1918 he drilled, but should not have done so; that he was assigned to some lighter duty; that the doctors said he had bellyache and gave him "C. C.'s"; that his stomach or bowel trouble continued while he was overseas and because of it he was weak all the time; that he coughed of a morning and took cold; that he did not notice any discoloration in his sputum; that he was corporal first and then a sergeant; that he did a lot of drilling overseas; that he was in the infirmary several times, just for a day and back; that he was with the company all the time; that he was sick at the time of his discharge and weighed less than normal. This was all his testimony as to his physical condition at the time of his discharge. He made a declaration at that time in regard thereto. In answer to the question as to whether he had reason to believe that he was then suffering from the effect of any wound, injury, or disease, or that he had any disability or impairment of health, incurred or not in the military service, he said "No." He testified that he made this declaration because he wanted to get home. Four or five doctors were lined up and he went through them a flying. They examined him with a stethoscope and found no disability. His testimony as to what happened after he was discharged was this. He went to the home of his mother in Somerset in this district; that he did not try to do any work the first two or three months as he did not want any, as he had $100 to $150; that he was in bed part of the time; that his family physician examined him and gave him treatment; that his money ran out and he had to go to work; that about September, 1920, he went to New Castle, Ind., and there found work which consisted in running a small drill press; that he was not able to hold out and do that work; that whilst there he had lumps in the pit of his stomach due to gas and consulted a doctor once about it, the result of which was not stated; that he worked there about three or four or five months; that he went from there to South Bend, Ind., and worked in an automobile factory marking off blocks with chalk for machinery for $3 or $3.50 a day; that he was not able to attend to work every day and work regularly; that he worked there a month and a half or two months and left because he was sick and could not work; that he returned to Somerset and thereafter consulted his family physician and afterwards another doctor located there; that he was hospitalized in Cumberland Sanatorium at Somerset for eight or nine months and was discharged because he became intoxicated; that he has not been able to work since leaving South Bend; that he tried to paint his house and had to quit and have it

done; that he then, i. e., at the time of his testifying, had a tubercular condition of his bowels and had to wear surgical dressing to protect his clothes; that the drainage from them was on an average an ounce and a half a day which required frequent changing of his dressing; that thirty minutes after stooling he has burning pains and has to go to bed; that such has been his condition since 1923; that in 1923 he went to the veterans' hospital at Dawson Springs, Ky., and was there operated on for the tubercular condition of his bowels; that it was about six months before they could get his bowels to drain; that he was at Rock Glen Sanatorium for about fourteen months; that from there he went to the National Soldiers' Home at Dayton, Ohio, and stayed there six months and then went again to Dawson Springs where he stayed about three years.

Plaintiff's family physician at Somerset testified that his physical condition was good at the time of his enlistment; that he could not say when he first saw him after his discharge, but that he treated him along at different times; that on December 27, 1920, plaintiff came to his office and wanted medicine, saying his stomach bothered him; that he examined him and ascertained that he was afflicted with gastritis, for which he had been treating him some time, and that he was not then able to do any kind of work without aggravating the trouble; that gastritis was an irritation or inflammation of the mucous membrane of the stomach and that it may superinduce or be connected with colitis, an irritation or inflammation of the mucous membrane of the colon, though he would not say that it would cause it; that gastritis was chronic; that plaintiff said he had been bothered with it before he came out of the service; that it lowers the vitality of the body generally by the inability of the stomach to digest food and causing lack of appetite which condition work would tend to make worse; that in his judgment plaintiff had then been so afflicted for two or three years; that he examined plaintiff again on February 4, 1921, when he found his condition to be the same as before; that he again examined him in 1922 and found then he had active pulmonary tuberculosis and also tuberculosis of the rectum or tubercular colitis; and that if he was examined on or about August 7, 1923, and found to have such an advanced case of pulmonary tuberculosis and tuberculosis of the bowels or colitis as to totally and permanently disable him, and such condition had continued to the time when he was testifying, in his judgment these tubercular conditions dated back as long as

four or five years. The other local physician testified that he examined plaintiff November 15, 1930, and his diagnosis was chronic gastritis. He found no evidence of tuberculosis, and that his prognosis was that he would improve under proper treatment and diet. The plaintiff was then complaining of shortness of breath and pain in the stomach and bowels with nausea and vomiting. This examination was made on behalf of the Bureau. He further testified that in his opinion, if plaintiff was examined on or about August 7, 1923, and found to have such an advanced case of pulmonary tuberculosis and tuberculosis of the bowels or colitis as to totally and permanently disable him, and such condition had continued to the time he was testifying, these tubercular conditions had existed for some time, though the time could not be definitely fixed, but possibly for four or five years.

The captain of his company testified that after they went overseas plaintiff was on sick report at different intervals, to which first sergeant called his attention; that he was unable to go to the drill field regularly or to participate in extreme maneuvers and heavy marching and he assigned him light duty; that he saw him in Somerset nearly a year and a half after his discharge and he had all the appearance of a very sick man, he seemed just about able to get along and such appearance has continued since. A comrade testified that practically the whole time in the winter and early spring of 1918 plaintiff was sick and going to doctors for some trouble with his stomach; that he lost weight; that he was not able to drill more than once in a while; that he was put on lighter duty because he was not able to do full duty; that he got sick one night and had to go to the hospital for treatment; that his condition was very serious; that he had more or less cramping or gas on the stomach; and that he was more or less going back to the hospital all the time. An acquaintance, who worked with him at New Castle and South Bend, Ind., testified that he saw him first a few days after he came back from the army and he was thin; that whilst so working he looked sick and could not eat or sleep to do any good; and that after they went to South Bend he could not do the job and in a few weeks went home. His mother testified that when plaintiff came home from the Army his health was bad; that he was in bed for part of the time for the first few months; and that he tried to work, but was not able to and could not hold out.

This is all the evidence introduced on behalf of plaintiff. No evidence was introduced on behalf of defendant. The usual testimony of physicians who made examinations on behalf of the Bureau are lacking. Seemingly the examination made by the local physician who was not plaintiff's family physician was made on its behalf. The findings and ratings made by the Bureau on an application for compensation were introduced in evidence by stipulation at plaintiff's instance. Question may possibly be made as to their competency. In the case of United States v. Golden (C. C. A.) 34 F.(2d) 367, 370 it was said: "The doctors making the 'ratings' are of course competent witnesses, just as doctors examining for other purposes are; but it is their testimony that is competent, and not the Bureau's 'rating' predicated thereon."

■ That case involved no question as to the competency of such evidence as bearing on the plaintiff's physical condition at the time of his discharge. The plaintiff there had alleged the ratings in his petition as basis for recovery on his insurance policy. They were immaterial to that end, and it was rightly held that such allegations were improper and should be stricken from the petition. It was admitted that the testimony of physicians who have made examinations on an application for compensation is competent. It is competent it would seem not only as to the then exact physical condition of the applicant, but as to the extent to which it disabled him. This would seem to be so, notwithstanding the difference between disablement which is a basis for compensation and that which is essential to a recovery on an insurance policy. In the one case it is a disablement from earning a living, i. e., a reduction in earning capacity. In the other it is disablement from following continuously a substantially gainful occupation. It seems to be that reduction in earning capacity has a bearing on ability to so follow such an occupation, and such reduction at a certain date may have a bearing on such ability at a previous date. At any rate it would seem that the findings of the Bureau on an application for compensation based on the examination of its physicians as to the physical condition at the time of the examination is competent, particularly in a case as here where the testimony of the physicians making the examinations is withheld. The findings and ratings of the Bureau in this case have certain abbreviations, which I cannot make out. I gather therefrom these findings. The plaintiff was disabled from the time of his discharge. Until November 14, 1920, it was less than 10 per cent. partial; from that date to April 7, 1921 it was 10 per cent. temporary partial; from April 7, 1921, to May 30, 1921, it was 75 per cent. temporary partial; May 30, 1921, to August 7, 1923, it was temporary total; and from August 7, 1923, to October 25, 1928, the date of the findings and ratings it was permanent and total. The finding was that on August 7, 1923, plaintiff had active pulmonary tuberculosis, chronic, far advanced, and seemingly it is that such condition was incurred in or aggravated by service. It was further that he had fistula in ano, discharging, tuberculous, which also was incurred in or aggravated by service. I gather further therefrom that the tubercular rating dates from the time of the discharge.

■ I see no escaping the conclusion that at the time of plaintiff's discharge he was afflicted with tuberculosis. I do not think that this is negatived by the fact that plaintiff's condition was diagnosed by the Somerset doctors in November and December, 1920, as chronic gastritis. Nor is it affected by plaintiff's declaration at the time of his discharge. He may not have realized his condition and he may then have been feeling better in view of his prospect of getting home than he did whilst he was in the service The characterization of the obtaining of this declaration as an "entrapment" was entirely unjustified. The government has a right to obtain from him a statement as to his then condition, and there was no reason why he should not tell the truth in regard to the matter.

As plaintiff at the time of his discharge was afflicted with tuberculosis he was then totally and permanently disabled, and he is entitled to judgment.