## UNITED STATES v. HARRISON et al.
### No. 3103.

Circuit Court of Appeals, Fourth Circuit.
April 13, 1931.

Bayless L. Guffy, Atty. U. S. Veterans' Bureau, of Washington, D. C. (James Damron, U. S. Atty., and Okey Paul Keadle and David F. Sheets, Assistant U. S. Attys., all of Huntington, W. Va., and William Wolff Smith, Gen. Counsel, U. S. Veterans' Bureau, of Washington, D. C., on the brief), for the United States.

H. D. Rollins, of Charleston, W. Va., for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and GLENN, District Judge.

PARKER, Circuit Judge.

This is an action upon a war risk insurance policy. The insured was honorably dis-

charged from the navy December 30, 1918. He paid no premiums on his policy after his discharge and the grace period expired February 1, 1919. He died of tuberculosis February 6, 1926. The suit was prosecuted by his administrator and the beneficiaries under the policy on the theory that insured was totally and permanently disabled prior to the expiration of the grace period, and that consequently the insurance never lapsed. There was a verdict and judgment for the plaintiffs, and the government has appealed. The principal exception in the case relates to the sufficiency of the evidence to sustain the verdict.

We do not think that there was sufficient evidence of total and permanent disability to bring the case within the principles laid down by us in Carter v. U. S., 49 F.(2d) 221, this day decided. There was general testimony on the part of insured's father and one of his neighbors that his health was not good, that he was complaining, that he could not work much and had lung trouble; but the physician who treated him in his final illness testified that the tuberculosis of which he died was only of several months standing, and there is no evidence that he had this disease or any other disease resulting in total and permanent disability during the greater part of the seven years which intervened between the lapse of his policy and his death. On the other hand, his certificate of discharge from the navy recommended him for re-enlistment; and a physical·examination made at the time of his employment at the Naval Ordnance Plant at South·Charleston, W. Va., in the year 1919 showed that he had no "indication of disease or of derangement of functions of respiration" and that, although five pounds underweight, his "degree of robustness" was "good." The evidence is uncontradicted that he was employed at the ordnance plant as a common laborer on July 11, 1919, at a wage of $3.68 per day; that he continued at that rating until June 15, 1920, when he was appointed a general helper at $4.32 per day, later changed to $4.56 and finally to $3.84 per day under new schedules of wages; that he was discharged at his own request without delinquency or misconduct on July 17, 1922, having been "continuously employed over a period of three years and six days"; and that his efficiency was "very good."

In the face of this evidence we do not see how the position that insured was totally and permanently disabled on February 1, 1919, can be sustained. As pointed out in the Carter Case, the fact that an insured actually does work, when the evidence shows that he is not able to work, does not preclude his recovering under the policy; but how can it be said that a man is not able to work when he does work under continuous employment for a period of more than three years? It is not satisfactorily established that insured had tuberculosis on February 1, 1919; but even if it be assumed that he had the disease at that time, it does not follow that he was totally and permanently disabled as a result thereof. Whether tuberculosis results in total and permanent disability depends upon the facts of each particular case; and there is no sufficient evidence here of such disability. The learned trial judge was laboring under the misapprehension that tuberculosis contracted prior to January 1, 1925, was conclusively presumed to have been contracted in the government service because of the provisions of section 200 of the World War Veterans' Act, as amended by Act July 2, 1926, § 7 (38 USCA § 471); but, as we have this day decided in the Searls Case, 49 F.(2d) 224, that presumption has no application to a case such as this.

There was error in admitting the death certificate of the undertaker [U. S. v. Blackburn (C. C. A. 9th) 33 F.(2d) 564], and there were certain other errors covered by the exceptions which, in the light of what we have already said, it is not necessary to discuss. For the error in refusing defendant's motion for a directed verdict, there must be a new trial; and the judgment below will accordingly be reversed.

Reversed.