## WOJCIECHOWSKI v. UNITED STATES.

District Court, W. D. New York.
July 10, 1931.

Frederick F. Grotz, of Buffalo, N. Y., for plaintiff.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y., by Joseph J. Doran, Asst. U. S. Atty., of Rochester, N. Y. (A. S. Thomson, Regional Atty., of Buffalo, N. Y., of counsel), for the United States.

KNIGHT, District Judge.

■ This is an action to recover on a war risk insurance policy. Upon stipulation of parties it was tried by the court without a jury. The plaintiff enlisted in the United States Navy March 16, 1917, and served until August 25, 1919, when he was honorably discharged. A war risk policy in the sum of $5,000 was issued to him under date of February 12, 1918. May 22, 1919, plaintiff, by instrument in writing, requested the cancellation of the policy. The last premium was paid May 1, 1919. Under the regulations of the government, which have the force of law, the protection of the insured for the face value of the policy continued until July 1, 1919. The policy provided for disability benefits in the event the assured became totally and permanently disabled. One contention of the government is that there was a valid cancellation of the insured's contract and that all insurance credits ceased July 1, 1919. In view of the determination at which I arrive herein, it is unnecessary for me to decide this question.

In or about September or October, 1918, while the plaintiff was in service on a transport ship, an epidemic of influenza broke out, causing death of some twenty sailors. Plaintiff claims that he was sick at the time from the same cause. He continued at his work uninterrupted. He did not report his sickness. He did not have the care of any physician. He never reported off duty at that time or thereafter. Other than his own testimony, there is nothing to show his alleged illness or any effect from it during any time of his service, which continued for eleven months. Plaintiff served as a coxswain. He had from ten to fifteen men under him, and these did "all kinds of work, painting and swabbing the decks and that kind of work." Some months after his discharge he worked regularly as an upholsterer for the American Body Company for a period of several months. Shortly after that he secured and continued employment as an upholsterer elsewhere, and he worked there regularly and continuously for a year. Later he worked for short periods of time. His wages as upholsterer were $30 a week.

Since 1927 plaintiff has received hospital care at various institutions. There is no question that this plaintiff is now suffering

from encephalitis (commonly known as sleeping sickness), and that his present disability from this disease is permanent. While the proof is somewhat meager showing total disability, this court concludes that it is so to the extent that he will never be able to follow continuously any substantially gainful occupation.

At the time of plaintiff's discharge from service, the government records show "no entry for disease or disability while in the naval service, and no physical defects noted at enlistment or discharge." Upon the reverse side of plaintiff's original discharge there is no record of any per cent. of time on the sick list during enlistment. There also appears this clause, "Physically qualified for re-enlistment."

Plaintiff claims that he was "sleepy" all the time for about two months before he was discharged. The only other direct evidence as to his condition was given by plaintiff's sister. This was to the effect that a sleepy condition of the plaintiff appeared shortly after his discharge. He claims he consulted a physician shortly after his discharge. The purpose of such visit and the diagnosis by the physician in no way appeared. Three years later he consulted another physician. The result of such consultation does not appear. Neither physician was called as a witness. Dr. Hassenfratz examined the plaintiff on May 6, 1921. He described conditions then as indicating the disease which I have mentioned. This question was asked of the doctor: "Q. Will you tell the Court what in your opinion would cause the condition that existed in his condition as you found him on May 6, 1921?" The answer of the physician was, "It shows some disturbance of the nervous system, particularly in the brain, and from the history of his case which he gave me at that time, I deduced that it was an encephalitis following a case of influenza that he had." The physician predicates his conclusion, of course, upon the history given by the plaintiff. He testifies that influenza is one of the usual causes of the disease in question, but that there are other causes. The germ of this disease is unknown, and there may be many unknown causes for it. The most that can be said for the doctor's testimony upon his examination is that influenza resulting from inflammation of the brain may have been the cause of plaintiff's present condition. Whether we may presume that it was the cause, depends upon the extent and violence of the attack.

■■ It seems to this court that the plaintiff has failed to show by a fair preponderance of the evidence that he suffered from his present disease or that he was "totally and permanently disabled" during the life of the policy. Blair v. U. S. (C. C. A.) 47 F.(2d) 109; U. S. v. Le Duc (C. C. A.) 48 F.(2d) 789. The fact that he had no treatment at the time he claims he suffered from the influenza, that no one witnessed his alleged condition, and that he did his regular work at all times during that period and until the time of his discharge, outweighs his testimony on this subject. Further accepting his own statements as true, it does not seem to me that plaintiff was "totally and permanently" disabled during the life of the policy of insurance, under the definition of these words as written in the regulations of the Bureau of War Risk Insurance. If he was not, of course he cannot recover in this action.

Many opinions have been written by the courts upon the application of the term "total and permanent disability." Counsel for the plaintiff and for the government have cited numerous ones. Certain general underlying principles are laid down. The application of these has always been made to different state of facts. The counsel for the plaintiff presses upon the attention of the court that the War Risk Insurance Act is to be liberally construed in favor of the soldier. The courts have so declared many times. This to my mind, however, does not mean that the plaintiff shall not establish his cause of action by a fair preponderance of the evidence. It does mean that a liberal interpretation and construction shall be given to plaintiff's proofs, and that the total so construed shall establish plaintiff's cause by a fair preponderance of the evidence.

"Total permanent disability must exist in order to make the greater protection [insurance] available. Whether such a condition exists must depend upon facts in the concrete case presented by the insured. It would be practically impossible to lay down a hard and fast rule; indeed, obviously it might be unjust to attempt to do so. * * *.

"A liberal construction of the statute should be adopted, but, of course, the courts always are bound by the limitations of the statute and by regulations properly made by the director, pursuant to the authority conferred by the law." United States v. Law (C. C. A.) 299 F. 61, 64.

The cases cited on plaintiff's brief do not conflict with my determination.

In Ford v. U. S. (C. C. A.) 44 F.(2d) 754, 755, there was undisputed proof of illness while in service and continuing thereafter. Plaintiff engaged only irregularly in employment. He suffered from spinal arthritis and received physiotherapy treatments from the Veterans' Bureau shortly after his discharge from service.

In U. S. v. Sligh (C. C. A.) 31 F.(2d) 735, plaintiff when discharged from service was suffering from active pulmonary tuberculosis. A physician testified positively that plaintiff's disability existed at the time of his discharge.

In Freeman v. U. S. (D. C.) 48 F.(2d) 233, say the court:

"The question may arise in a given case where the disability is rested on a certain disease whether such disease must then be existent, or will it be sufficient that the seed of the disease is then in his body. It would seem that, if, in any case, it would be sufficient that the seed of the disease so existed, it is essential that necessarily and inevitably the disease must thereafter develop from such disease so that it can then be said that he is potentially so diseased, and hence potentially so disabled.

"The burden is on the plaintiff to establish by a preponderance of the evidence the existence of such disease or seed and consequent disability at the time of the discharge. In order to do this the plaintiff must introduce substantial evidence to this effect, and, even though he may do so, he cannot recover if it is overcome or equalized by substantial evidence introduced by the defendant. The plaintiff's failure to so establish cannot be supplied by grace. This court is not the government passing on the question whether the plaintiff should have a pension. The question before it is whether plaintiff is entitled to recover on his policy of insurance and to this end he must bring himself within the terms. Hence it is that it is not sufficient for plaintiff to establish the subsequent incurrence or existence of such disease or seed thereof and consequent disability. It must have existed at the time of the discharge."

It will be seen that Freeman v. U. S., supra, is quite parallel to the one at bar, and it was there held that the plaintiff did not sustain the burden of the proof, and the petition was dismissed. In that case at the time of the discharge the plaintiff signed a certificate as to "no physical disability," and the report thereon stated that plaintiff was examined for discharge and no defects noted. In this connection the court says:

"This is not to be brushed aside by his testimony that he did not read anything to the effect that he had no physical disability, and that he was just told to sign the paper and did so without knowing what was in it. * * * Then there is no reason to think that the examination made of him was superficial. There is no indication that a great number of sailors were being discharged at that time which might lead to a more or less superficial examination. Then according to plaintiff's testimony he was treated by three physicians after his return home, apparently in succession, the first of whom is dead. The testimony of the other two was not taken, and no explanation is given why it was not. * * * The result is that I do not feel sure as to just what was plaintiff's physical condition at the time of his discharge."

In Clark v. U. S. (D. C.) 48 F.(2d) 291, 292, plaintiff was shocked by explosion of a shell. The shock rendered him unconscious for over an hour—"possibly as much as three or four." From that time he suffered from a weak back. His testimony regarding his condition was corroborated by two comrades. The physician examining immediately after his discharge testified that he appeared to be suffering from tuberculosis. From that time on his condition continued to grow gradually worse. He was discharged in May, 1919. In November, 1920, he was examined by the Veterans' Bureau and case was diagnosed as chronic bronchitis. Shortly thereafter it was diagnosed as "chronic quiescent pulmonary tuberculosis, moderately advanced"; a little later, "chronic pulmonary tuberculosis;" later "chronic pulmonary tuberculosis" and "valvular heart disease, mitral insufficiency;" and later, "chronic pulmonary tuberculosis moderately advanced." The Veterans' Bureau awarded compensation on basis of total disability. He then was at a Veteran's Hospital a considerable time, and a diagnosis there showed "pulmonary tuberculosis far advanced and that his spine was affected." Shortly after his discharge he did work for some two and one-half months. He quit because his back "gave way."

In Nichols v. U. S., 48 F.(2d) 293, the opinion was written by the same District Judge who wrote the opinion in the Clark Case, supra. In the Nichols Case, a very considerable amount of evidence both by lay witnesses and by physicians shows the origin of plaintiff's disease and its continuation both

through his period of war service and continually thereafter. The court concluded that the defendant was suffering from tuberculosis at the time of his discharge and was then totally and permanently disabled.

In numerous cases, reference is made to the declaration of the petitioner at the time of his discharge. Some courts are inclined to give considerable weight to this declaration; some give it little. In the instant case, attention is called to it in connection with the other testimony going to show petitioner's condition, and not with the purpose to indicate that, standing alone, it is sufficient to outweigh the proof of the plaintiff.

In Barksdale v. U. S. (C. C. A.) 46 F. (2d) 762, plaintiff was discharged on account of physical disability. The court held it was a question of fact for the jury whether the plaintiff was totally and permanently disabled. The physicians testified to serious physical ailments, from which they claimed he had practically recovered, and there was lay testimony in contradiction. It would appear the plaintiff did some work, but just how much the opinion does not disclose. It did appear that he was continuously under treatment at the time of his discharge till the action was brought. It is true, as stated in Barksdale v. U. S., supra, and U. S. v. Godfrey (C. C. A.) 47 F.(2d) 126, 127, that the fact that the plaintiff did perform some labor, even for some considerable time, is not conclusive on the question of "total and permanent disability." It is true, as noted in U. S. v. Phillips (C. C. A.) 44 F.(2d) 689, 691, "total and permanent disability" does not mean that the party must be unable to do anything whatever. As was said in Knight v. U. S. (D. C.) 45 F.(2d) 202, 203, "A man may work when it is not proper for him to do so;" and again it is said in U. S. v. Rasar (C. C. A.) 45 F.(2d) 545, 547, "total disability is not an abstract concept. * * * It is a relative term, and whether it is present in a particular case depends upon the peculiar facts and circumstances of that case."

In Knight v. U. S., supra, it appeared without contradiction that the plaintiff suffered severe illness during service, diagnosed as "uremic seizures, consequent upon the condition of accute nephritis"; that he was in the hospital several times prior to his discharge; that he re-enlisted on the expiration of his enlistment with the purpose to receive benefit by medical treatment, and he was recorded on the medical records as totally disabled and as of June 28, 1920. He died in 1925. He had a medical history continuing from August, 1919. He did some work at the time when it was claimed that he was totally and permanently disabled, but this was for a short period of time. Say the court: "From this point of view, having the whole story before us, it seems reasonably clear that, after May, 1919, he was never physically able to go out into the world on his own account and follow continuously any substantially gainful employment."

In U. S. v. Harrison (C. C. A.) 49 F.(2d) 227, 228, insured was discharged December 30, 1918. He died of tuberculosis February 6, 1926. There was general testimony to show a healthy condition of insured after his discharge. The court said: "There is no evidence that he had this disease or any other disease resulting in total and permanent disability during the greater part of the seven years which intervened between the lapse of his policy and his death. On the other hand, his certificate of discharge from the navy recommended him for re-enlistment; and a physical examination made * * * in the year 1919 showed that he had no 'indication of disease or of derangement of functions of respiration.'"

He was employed continuously over a period of three years. The court there held that he could not recover. Say the court further: "It is not satisfactorily established that insured had tuberculosis on February 1, 1919; but even if it be assumed that he had the disease at that time, it does not follow that he was totally and permanently disabled as a result thereof. Whether tuberculosis results in total and permanent disability depends upon the facts of each particular case; and there is no sufficient evidence here of such disability."

In Carter v. U. S. (C. C. A.) 49 F.(2d) 221, plaintiff was injured in battle. Later he was gassed. He suffered from serious disability for a period long prior to the time of his discharge. There was little question that he had tuberculosis when discharged. The court on the appeal held that the evidence was sufficient to take the case to the jury. In this case many of the authorities on the question of what constitutes "total and permanent disability" are cited. The opinion here was written by the same Circuit Judge who wrote the opinion in U. S. v. Harrison, supra.

In U. S. v. Le Duc (C. C. A.) 48 F.(2d) 789, 793, insured was discharged May, 1919. He worked intermittently at different employments for upwards of three years. He

was sent to the reformatory and served for three years. While imprisoned he worked at manual labor in stone quarry and other work. He was hospitalized in 1926 and died September 23, 1926. Against his record of service and employment members of his family testified that after his return from the service he showed various signs of illness. There was no direct proof that the insured had tuberculosis while in the service. An X-ray expert testified that the condition of tuberculosis might have continued for two or for ten years. In that case the court says that, upon the assumption that tuberculosis existed during war service, the further assumption that the soldier was totally and permanently disabled during the service does not follow. Say the court further: "Ordinarily, a presumption cannot be weighed in the balance against facts, and there is no medical testimony showing that any physician ever found the insured suffering from tuberculosis until December, 1925. Granting that the presumption was properly invoked, it would not, as already pointed out, sustain the contention that the insured became totally and permanently disabled while the insurance contract was in force."

Say the court further: "After all, the right of recovery in these war risk insurance cases is dependent on contract, and it is not within the province of the jury to award from the public funds gratuities to relatives of deceased ex-soldiers; nor can we, under the guise of liberal construction, close our eyes to the undisputed facts disclosed by the record in this case." Vide Blair v. U. S. (C. C. A.) 47 F.(2d) 109.

In U. S. v. Vance (C. C. A.) 48 F.(2d) 472, plaintiff was discharged February 1, 1919. A physician treated him from the time of his discharge until 1920 and diagnosed his affliction as tuberculosis. The soldier had been rated as suffering from a compensable disability from the date of his discharge. The question of total and permanent disability was not seriously contested on appeal. The main point urged was the question of the right to apply uncollected disability compensation on insurance policy premiums under section 305, World War Veterans' Act 1924, as amended by Act May 29, 1928, § 17 (section 516, title 38, United States Code [38 USCA § 516]). Vide, also, U. S. v. Crowell (C. C. A.) 48 F.(2d) 475.

Giving a most liberal interpretation to the evidence offered in support of plaintiff's contention, I do not see how I can find that during the life of the policy the plaintiff had

such an impairment of mind or body rendering it impossible for him to follow continuously any substantial gainful occupation and that he suffered any condition then which rendered it reasonably certain that any disability would continue throughout his life. One must sympathize with another who is afflicted as is this plaintiff, but justification cannot be found in it for the failure of the court to pronounce its decision upon the facts as it sees them.

Judgment is directed for the defendant.