## ANDERSON v. UNITED STATES.

District Court, E. D. Kentucky.
Dec. 17, 1932.

Perry B. Miller, of Louisville, Ky., for plaintiff.

Sawyer A. Smith, U. S. Atty., of Covington, Ky., and Thomas E. Walsh, of Washington, D. C.

ANDREW M. J. COCHRAN, District Judge.

This is an action on a war risk insurance policy. The plaintiff filed his claim with the United States Veterans' Bureau at Louisville, Ky., on May 7, 1929. Thereafter he received a letter, dated June 12, 1929, signed "By direction, J. T. Allen, Regional Adjudication Officer, Louisville, Ky.," in which it was stated that: "The evidence in his claim had been reviewed and it was held that his disabilities were not shown to be permanent and total for insurance purposes under the present evidence, and he was not entitled to insurance benefits, but he might submit additional evidence showing his present physical condition." He submitted additional evidence, and thereafter he received a letter, dated July 15, 1929, signed the same as before, in which it was stated: "This evidence was considered by this office under date of July 3, 1929 and held not sufficient to warrant a permanent and total rating for insurance purposes from the date of your discharge from military service. Under this decision

you are not entitled to payments of insurance."

Thereupon, i. e., on August 8, 1929, the plaintiff addressed a letter to the Regional Office at Louisville, Ky., giving notice of appeal to the Central Board of Appeals. In answer thereto he received a letter, dated August 21, 1929, signed as aforesaid, requesting that he advise that office of his desire to appeal over his own signature and stating that: "If you have additional evidence that you wish to file in support of your claim, you should send it forward for the reason that the Board of Appeals will not consider evidence that has not been previously passed upon by the Regional Office. If your letter in answer to this communication restates your desire to appeal your case will be forwarded to Section D, Central Board of Appeals, Chicago, Ill."

In answer thereto he restated his desire to appeal under his own signature, furnishing no additional evidence, and the case was forwarded to the Board of Appeals.

Thereafter, on March 4, 1930, he addressed a letter to the Board of Appeals inquiring as to the status of his claim. In answer thereto, in a letter dated March 17, 1930, it was stated: "You are respectfully advised that your case is receiving appropriate attention and you will be duly advised when action has been completed by this office." Again, on April 12, 1930, he addressed a letter to the same effect to the Board of Appeals, and in answer thereto he received a letter, dated April 24, 1930, in which it was stated: "Please be advised that every effort is being made whereby an early decision may be had in your case. You will be notified as soon as final action has been taken." Again, on May 9, 1930, he addressed a similar letter to the Board of Appeals, and in answer he received a letter, dated May 19, 1930, in which it was stated: "You are advised that your claim is receiving appropriate attention at the present time by the Bureau and you will be notified relative thereto at a later date."

Thereafter he ceased inquiring of the Board of Appeals as to the status of his claim, and waiting until June 24, 1931, he on that date brought this action on the policy. Within a month thereafter he received a letter dated July 22, 1931, from the director of insurance notifying him that he had been given a rating of permanent and total for insurance purposes from the date of his discharge and that upon the execution of a certain form action would be taken towards awarding him insurance. This form was executed and the award made. He claims that he is entitled to a judgment herein for his insurance, not on this award, but on the policy. In disposing of this claim it is assumed that the policy matured at the time of his discharge, when he ceased to pay premiums, and the question is whether he must look to his award or is entitled to judgment herein on the policy. If he had the right to bring the action when he did, it would seem that he is entitled to judgment. The subsequent making of the award should not deprive him thereof. His right to so bring the action depends on whether, at that time, there was the necessary disagreement required in order thereto.

By section 19 of the World War Veterans' Act of 1924 (38 USCA § 445 note), it is provided that: "In the event of disagreement as to claim under a contract of insurance between the bureau and any beneficiary or beneficiaries thereunder an action on the claim may be brought against the United States either in the Supreme Court of the District of Columbia or in the district court of the United States in which such beneficiaries or any one of them resides."

By section 5 of that act (38 USCA § 426), it was provided: "All officers and employees of the bureau shall perform such duties as may be assigned them by the director. All official acts performed by such officers or employees specially designated therefor by the director shall have the same force and effect as though performed by the director in person."

By Special Order No. 387 issued by the Bureau on or about June 15, 1929, it was amongst other things provided: "1. Pursuant to Section 5 of the World War Veteran's Act 1924, authority is hereby delegated to Regional Managers to effect final denial of claims for insurance benefits in accordance with the provisions of this general order." "6. The final denial by the Regional Manager of claims for insurance benefits in accordance with the foregoing provisions of this general order shall constitute the final action of the United States Veteran's Bureau with respect to such claims. After being notified of such final denial, if the claimant shall elect to pursue his right of appeal to the director in lieu of pursuing other remedies prescribed by law, his appeal will be considered in accordance with the established procedure governing appeals."

The last paragraph of the amendment to section 19 of the World War Veterans' Act of 1924 made by the act of July 3, 1930 (38 USCA § 445), defined the words "claim" and "disagreement" in the portion thereof hereto-

fore quoted. The definition of the word "disagreement" was "a denial of the claim by the director or some one acting in his name on an appeal to the director."

In an opinion given January 23, 1929, by the Solicitor General in the case of In re Edward Shields Cross, it was said: "If the regulations for successive appeals within the Bureau were intended to benefit the veteran by giving him every opportunity to secure justice why inflict them on him if he does not want to take advantage of the right of appeal? After all, speedy results are what the veterans want, and where the initial board has decided against him, and he thinks it a waste of effort to appeal or that he will get a quicker settlement by suit why prevent it? In my judgment, if there is an adverse decision on a claim by a board or tribunal within the Bureau to whom has been lawfully delegated the power to act on it that constitutes a disagreement between the claimant and the Bureau and the claimant is not required as a condition precedent to suit to take all the appeals and demand all rehearings which the regulations permit and he cannot properly be said to consent and acquiesce in the Bureau's decision because he brings a suit instead of resorting to appeals within the Bureau."

The amendment of July 3, 1930, in thus defining the word "disagreement" was intended to meet the position here taken and to require the claimant to avail himself of the entire machinery of the Bureau before bringing suit. The purpose of the amendment was thus explained by the Senate Finance Committee report which accompanied the bill containing it (71st Congress, 2d Session, Senate Reports, No. 885, p. 4): "A paragraph is added to define the meaning of the term 'claim' and the term 'disagreement' as used herein. It has for its purpose the establishment of a definite rule that before suit is brought a claimant must make a claim for insurance and prosecute his case on appeal through the appellate agencies of the bureau before he shall have the right to enter suit. Your committee felt that in view of the fact that the Government has set up in the bureau expensive machinery for hearing claims it was unfair for a veteran to disregard this machinery on the basis of the disallowance of his claim by some subordinate board and enter suit." It was further provided in this added paragraph (38 USCA § 445) as follows:

"This section, as amended, with the exception of this paragraph, shall apply to all suits now pending against the United States under the provisions of the War Risk Insurance Act, as amended, or this chapter."

According to this the entire section with the exception of this paragraph applied to all claims whether in suit or not, and this paragraph did not apply to those for which suits were then pending. The implication is that it, along with the other provisions of the section, did apply to claims not then in suit, irrespective of the condition in which they were. Pursuant to this Act of July 3, 1930, the director was succeeded July 21, 1930, by the Administrator of Veteran Affairs.

■ In the light then of these provisions of section 19, as it stood originally and section 5 of the World War Veterans' Act of 1924 and the amendment to such sections by the act of July 3, 1930 (38 USCA §§ 445 and 426), did the plaintiff have the right to bring this action? It is well settled that a disagreement between the Bureau and the claimant as to the validity of the claim is essential to his right to bring suit thereon. Gallardo v. United States (D. C.) 5 F.(2d) 678; United States v. Lyke (C. C. A.) 19 F.(2d) 876; United States v. Jackson (C. C. A.) 34 F. (2d) 241, 73 A. L. R. 316; Manke v. United States (C. C. A.) 38 F.(2d) 624; Berntsen v. United States (C. C. A.) 41 F.(2d) 663; United States v. Burleyson (C. C. A.) 44 F. (2d) 502; United States v. Ranes (C. C. A.) 48 F.(2d) 582; Mara v. United States (D. C.) 54 F.(2d) 397; Smith v. United States (D. C.) 56 F.(2d) 636; Maulis v. United States (D. C.) 56 F.(2d) 444; Taylor v. United States (D. C.) 57 F.(2d) 331; Kelley v. United States (D. C.) 59 F.(2d) 743; Griffin v. United States (C. C. A.) 60 F.(2d) 339.

■ The plaintiff undertakes to meet this requirement in two ways. One is that the denial of his claim on July 3, 1929, communicated to him by letter dated July 15, 1929, was sufficient to entitle him to bring the action. The answer to this position is threefold. The requirement of the amendment of July 3, 1930, was that the machinery of the Bureau should be exhausted before there shall be a right to bring suit. That claim was not then in suit. This action was not brought until the lapse of nearly a year after such denial. Again, General Order No. 387 authorized a denial by the regional manager. The denial relied on was not made by the regional manager. The letters which the plaintiff contends were issued pursuant to the provisions of General Order No. 387 were not in fact issued under this General Order and do not conform to its provisions. The letters were all signed by J. T. Allen, the Regional Adjudication Officer. He was not authorized to sign letters under the

provisions of General Order 387. The only person so authorized under that General Order was the Regional Manager.

■ Then the taking of the appeal from the denial annulled its operative effect as a basis for bringing the action, if it otherwise existed. This is evident from the fact that the limitation on the time in which suit might be brought after final denial would begin to run not from the denial of July 3, 1929, communicated July 15, 1929, but from the denial on the appeal. There is nothing in the opinion of the Solicitor General, quoted above, justifying the position that plaintiff could both appeal and sue. What he held was that the claimant need not appeal, but might sue without further dealing with the Bureau.

■ The other way in which plaintiff undertakes to meet the requirement as to the agreement is that the delay in acting on his claim after the appeal was taken was unreasonable and such delay was the equivalent of an actual denial. In support of this position the decision in Dobbie v. United States (D. C.) 19 F.(2d) 656, is cited. This case was decided before the amendment of July 3, 1930, to section 19 of the World War Veterans' Act of 1924. The decision in United States v. Golden (C. C. A.) 34 F.(2d) 367, also relied on, to no extent favors the position. Against the position are the decisions in the cases of Smith v. United States, supra; Maulis v. United States, supra. In Griffin v. United States, supra, a decision of the question was waived on the ground that the delay relied on was not unreasonable. There the claim was mailed to the Bureau September 10, 1930. October 17, 1930, the Rating Board notified claimant that the claim was denied October 13th. October 21, 1930, he appealed to the Central Board of Appeals. December 19, 1930, he was notified by the Bureau that the Central Board had decided adversely to his claim. December 23, 1930, he appealed to the Council of Appeals. January 17, 1931, he was notified by the Bureau that the file was being forwarded to the Council of Appeals. February 11, 1931, with the case still pending before the Council of Appeals he notified the Administrator of Veterans' Affairs that if he did not receive notice of final action on his claim within 60 days from that date he would institute suit. June 1, 1931, he brought suit, no further action having been taken in his case by the Bureau. The court said: "Appellant's conclusion that the delay was unreasonable is based entirely upon the several dates of the different actions upon his claim by the various departments of the Bu-

reau. This we think is not sufficient. Being charged with general knowledge of the magnitude of that department, and the enormous and continually increasing number of claims before it, we are unable to say, without other factual enlightenment that sixty days is a reasonable time within which the director and those acting under him shall dispose of all appeals presented to him. Indeed the facts involved in this class of cases are usually so radically different that it would be impossible to fix a limit that would be just to claimants or the department."

■ After the amendment to section 19 of the World War Veterans' Act of 1924 by the Act of July 3, 1930 (38 USCA § 445), however it may have been before, it would seem clear that no delay whatever on the part of a subordinate official or board in handling a veteran's claim for insurance can entitle him to bring suit. Actual denial by him will not be sufficient to so entitle him. How then can delay on his or its part have such an effect? If delay can in any event be thus effective, it must be delay on the part of the Director or his successor, the Administrator of Veterans' Affairs, and there can be no delay on his part until the claim comes before him on appeal. This consideration of itself is sufficient to dispose of this case. There is nothing showing that there was any delay in handling the claim in suit save on the part of the Central Board of Appeals. But I do not think that delay on the part of the Director or his successor, the Administrator of Veterans' Affairs, can in any contingency be treated as the equivalent of an actual denial of the claim on his part. The United States cannot be sued on such claims save by its consent. This being so, it can annex such conditions as it sees fit to a right to sue it. It has provided that it is essential in order to the right to sue it thereon that the Director or Administrator of Veterans' Affairs shall deny the claim. This I take to mean that he must actually deny it.

In United States v. McLean, 95 U. S. 750, 24 L. Ed. 579, it was said: "But courts cannot perform executive duties or treat them as performed when they have been neglected. They cannot enforce rights which are dependent for their existence upon prior performance by an executive officer of certain duties he has failed to perform." It is not likely that the Director or the Administrator of Veterans' Affairs or his subordinates will unreasonably delay action on any claim. It cannot be taken that he or they will purposely delay such action. If there is any unreasonable delay, it must be due to oversight

or neglect, and this delay can be corrected by calling attention to it. If a cause for action exists and it is not taken, it can be compelled, by mandamus. Whilst courts are of necessity continually determining rights on the basis of what is reasonable, the criterion is at best an uncertain one. If it is to be applied in suits on war risk insurance claims, different positions as to what is reasonable are likely to be taken by the different judges handling them. Then, if it is understood that a suit can be brought whenever there is unreasonable delay in action on the part of the Bureau, the federal courts will be swamped by such suits. Their dockets are already crowded with cases where there has been an actual denial.

I feel constrained, therefore, to hold that plaintiff's petition be dismissed.