### UNITED STATES v. STAND.
### No. 1758.

Circuit Court of Appeals, Tenth Circuit.
March 3, 1939.

Petition for Modification of Opinion Denied April 25, 1939.

Fendall Marbury, of Washington, D. C. (Whitfield Y. Mauzy, U. S. Atty., of Tulsa, Okl., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst.

to the Atty. Gen., and Thomas E. Walsh, Atty., Department of Justice, of Washington, D. C., on the brief), for the United States.

A. E. Williams and Harry Seaton, both of Tulsa, Okl., for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

Rosie Bell Stand, as plaintiff, instituted this suit against the United States, as defendant, to recover war risk insurance benefits as the beneficiary designated in a contract of war risk insurance issued to Leander F. Stand during his military service, it being alleged that said contract matured by reason of insured's total permanent disability on May 28, 1919, the date of his discharge from military service, disability and death benefits being claimed from that date.

The parties will be here referred to in the order in which they appeared in the trial court.

Defendant's answer as amended denied that said contract had matured as alleged, and pleaded the further defense that the action was barred by limitation contained in Section 19 of the World War Veterans' Act, as amended, 38 U.S.C.A. § 445.

A jury having been waived, it was tried to the court.

As stipulated, the veteran, Leander F. Stand, was inducted into the United States army on September 22, 1917, and honorably discharged therefrom on May 28, 1919, and while in said service he applied for and obtained a $10,000 war risk insurance policy, his wife, Rosie Bell Stand, being therein named as the beneficiary.

The policy lapsed, unless otherwise matured, for non-payment of the premium due May 1, 1919, protection extending under the terms of the contract to June 1, 1919. The veteran Stand died August 17, 1922.

Insured was apparently able-bodied and enjoyed good health before his induction into military service, his principal prewar occupation being a hostler, for which he received a monthly wage ranging from $75 to $100.

He had received an eighth grade education. During military service he was treated from September 28, 1918 to October 7, 1918 for a slight gunshot wound in the back of the neck, the condition being classified as healed on the latter date. At time of discharge he signed a statement to the effect that he did not have any reason to believe he was suffering from the effect of any wound, injury, or disease or that he had any disability or impairment of health incurred while in the military service.

His immediate commanding officer signed a similar statement. An examining surgeon at that time, to-wit, May 27, 1919, certified that he had given the said veteran a careful physical examination and found him to be physically and mentally sound.

On his return home immediately after his discharge, he appeared to be weak, nervous and pale, and shortly thereafter a loss of weight was observed, and being stricken with a pain in his side he had to lie down.

He complained continuously with pain in the side, suffering from nervous spells and loss of sleep. Occasionally he spat blood and his wife noticed a cough within four or five weeks after such return, which gradually grew worse. Within such four or five weeks after such return he had a slight hemorrhage, occasionally same occurring until his death, a temperature developing in the fall of 1919.

As to the veteran's employment, he did some work as a clerk in pool rooms and odd jobs hauling and unloading cement and sand, there being no constant employment. He lost time from work complaining of his side hurting and continuing to run a fever, and not working "anything like half the time." In an application for compensation made on April 10, 1922, he gave his post-war record of employment as follows:

"Clerk, for Houston & Whitney—commencing date, July 27, 1919; ending date, July, 1921—at $120.00 per month.

"Clerk, for Kasiske Bros.—commencing date, November 14, 1921; ending date, March 2, 1922—at $90.00 per month.

"Present employer—Kasiske Bros., Hominy, Oklahoma."

The nature of disability for which compensation was claimed was "Wounded in neck."

In the application, it was explained that insured received $20 per week when he was employed by Whitney. Hamilton, who worked with insured when he was thus employed, testified that insured did

not work constantly or regularly and that he lost much time, observing that insured coughed and had several hemorrhages while working in the pool hall. When witness' employment terminated, the veteran was still on the job.

Frank Noble testified that insured racked balls in a pool hall after the war; that he was weak looking, and did not know how steadily he worked there, whether one-half, one-third or one-fourth of the time.

Kasiske testified that in partnership with a brother he acquired the pool room business of Houston and Whitney; that the veteran Stand worked for them during the forepart of 1922 as a "ball racker", keeping the tables clean and doing general work around the pool room; that Stand was an excellent employee and always did his work satisfactorily; that he was paid about $35 per week and worked about twelve hours per day, being on his feet practically all the time, and that it was necessary for him to work steadily in order to hold the job. He did not recall that the insured had ever complained about illness. He could not recall the exact period of employment, but stated that it was for several months.

Clyde Poulton testified that insured worked for him off and on for a short period after the war but did not make a full hand, and that he paid him only $2 per day, whereas he paid others $4 per day.

Goad testified that he went squirrel hunting with the veteran about a week after his return from the army, and observed that he coughed and was short-winded, and rested quite a few times. He also worked with him on one dirt hauling job, observing the same symptoms.

On cross-examination he stated that he could not say that the veteran worked more than half the time in the pool hall from 1919 to 1921; that he knew he had worked there from 1919 to possibly 1922, not being able to give the exact number of days that the veteran was employed there, but he did not work over half the time while he was there.

Hutchinson hunted and fished with the veteran, observing he was short-winded and unable to keep up "with the bunch." He knew of his work around Hominy and that he lost time on the job.

The evidence disclosed that the veteran died August 17, 1922 of tuberculosis, and that he received treatments from Drs. Berry, Mitchell, Colley and Guyman, being treated some during 1919, and from that time until his death.

Dr. Mitchell testified that insured was first examined by him in September, 1919, but he did not have records thereof as same were destroyed by fire in 1931. He remembered that he found active tuberculosis at that time in the upper portion of the left lung. He next saw him in September, 1920, examining and treating him thereafter until October, 1921, for active pulmonary tuberculosis.

The veteran had been under treatment of Dr. Berry between the witness' first and second examination. Dr. Berry first examined the insured in June 1919, finding moist rales in both lungs, when he made a diagnosis of active pulmonary tuberculosis.

He treated the insured for about a year or a little over a year, two or three times a month, the pulmonary disease continuing during this time. Dr. Berry did not make a sputum examination.

Dr. Guyman made a positive sputum analysis in July or August, 1919, and saw the insured have a hemorrhage in his office in July or August, 1919. His condition did not improve with treatment. Dr. Guyman's judgment was that insured was physically and bodily unable to respond to treatment. On the first examination the tuberculosis was in the first stage, moderately advanced, and at time the treatments were terminated it was in the second stage. He could not say what the probable duration of the disease was before he first attended him. He stated that it was his experience that Indians—and veteran was an Indian—did not respond to treatment of tuberculosis as well as members of the White race.

With reference to the limitations question, the claim was filed with the Veterans' Administration on March 16, 1931 and denied by Insurance Claims Council on September 17, 1934. An appeal from this decision was filed with the Veterans' Administration on September 17, 1935, resulting in an affirmance of the decision of the Insurance Claims Council by the Administrator of Veterans' Affairs on December 4, 1936. Suit was instituted December 7, 1936, defendant interposing motion to dismiss for the reason that the

cause of action was barred by limitation, question being whether the suspension as provided in Section 19, World War Veterans' Act as amended, 38 U.S.C.A. § 445 commenced with the timely filing of claim in the Veterans' Administration on March 16, 1931, terminated with the denial by the Insurance Claims Council on September 17, 1934, or with the denial on appeal on December 4, 1936.

Plaintiff was notified by the Director of Insurance September 14, 1934 that she had one year in which to appeal from the Insurance Claims Council to the Board of Veterans' Appeal, which is in accordance with the rules and regulations promulgated by the Veterans' Administration on September 4, 1934, and amendment to Veterans' Administration regulation No. 3204, dated November 1, 1931.

On November 11, 1936, the Insurance Claims Council again considered said claim, including additional evidence submitted, and then confirmed its decision of September 12, 1934, and certified said claim to the Board of Veterans' Appeal.

On December 4, 1936, the Board of Veterans' Appeal found that the appeal was timely filed and that it had jurisdiction to hear and determine said appeal and claim and held: "This decision constitutes final administration denial of this claim."

This suit having been instituted on December 7, 1936, within 90 days from the final determination by the Insurance Claims Council, and also within three days of the final determination by the Board of Veterans' Appeals, it was within time.

This court takes judicial notice of regulation of war bureau of war risk insurance adopted pursuant to war risk insurance act. United States v. Lawson, 9 Cir., 50 F.2d 646.

Respecting war risk policy, government regulations have force of law. Wojciechowski v. United States, D.C.W. D.N.Y., 51 F.2d 385.

See, also, United States v. Phillips, 7 Cir., 92 F.2d 849, certiorari denied 303 U. S. 649, 58 S.Ct. 746, 82 L.Ed. 1110; Hansen v. United States, 7 Cir., 67 F.2d 613, certiorari denied 291 U.S. 670, 54 S.Ct. 454, 78 L.Ed. 1060; Anderson v. United States, D.C.E.D.Ky., 5 F.Supp. 269.

It is insisted by the appellant that there was no substantial evidence to show that insured became totally and permanently disabled on or before June 1, 1919, and in such a case the verdict of the jury should not stand.

One is totally disabled when he is not without injury to his health able to make a living by work. United States v. Sorrow, 5 Cir., 67 F.2d 372. One is totally disabled within war risk policy when unable, without injury to himself, to make a living by working. To establish total disability within war risk policy, it is unnecessary to prove absolute inability to do any kind of work. McNally v. United States, 8 Cir., 52 F.2d 440; Sorvik v. United States, 9 Cir., 52 F.2d 406; United States v. Auer, 3 Cir., 51 F.2d 921, and Carter v. United States, 4 Cir., 49 F.2d 221.

The veteran, Stand, was discharged from the army May 28, 1919. The grace period extended the force of the policy to June, 1919, and the jury were justified in finding from the evidence that Stand had an active case of pulmonary tuberculosis at the time of his discharge; that it progressed rapidly despite treatment, and that he died therefrom August 17, 1922. The testimony of one or more of the physicians was that Stand was an Indian and that Indians were more subject to the ravages of tuberculosis and less able to respond to treatment than a white person. The evidence shows that Stand did not respond to the treatment.

The jury were justified in finding that the condition was permanent on May 28, 1919 and within the grace period. The statute of limitations did not run during the time the appeal from the denial of the claim was pending before the bureau, which finally denied it. The action was brought within the time permitted therefor after such denial. The purpose of the administrative consideration is to avoid litigation. If construction were reached so as to compel the bringing of a suit notwithstanding the pendency of the appeal it would be in the face of the objective purpose for an additional hearing by appeal.

The judgment of the lower court should be, and is, affirmed.