## MADRAY v. UNITED STATES.

### No. 3230.

Circuit Court of Appeals, Fourth Circuit.

Jan. 13, 1932.

Robert McC. Figg, Jr., of Charleston, S. C. (J. D. E. Meyer, A. Russell McGowan, Hyde, Mann & Figg, and S. S. Seidemann, all of Charleston, S. C., on the brief), for appellant.

S. Henry Edmunds, Jr., Asst. U. S. Atty., of Charleston, S. C. (Henry E. Davis, U. S. Atty., of Florence, S. C., William Wolff Smith, Sp. Counsel, Veterans' Administration, of Washington, D. C., and J. C. Willcox and Bayless L. Guffy, Attys., Veterans' Administration, both of Washington, D. C., on the brief), for the United States.

Before NORTHCOTT and SOPER, Circuit Judges, and COLEMAN, District Judge.

WILLIAM C. COLEMAN, District Judge.

This is an appeal from a judgment of the District Court for the Eastern District of South Carolina, upon a directed verdict in favor of the United States, appellee, against the appellant, in an action for recovery upon a war risk insurance policy. Appellant contends that he had become totally and permanently disabled during the life of the policy from following continuously a substantially gainful occupation, as a result of mental and nervous troubles. While there are three assignments of error, each raises, merely in different language, the same, and the only question presented for our determination, namely, whether in view of the testimony adduced on the part of appellant, the trial

judge was justified at the close of appellant's case in directing a verdict in favor of the government; or whether such testimony required that the character and extent of appellant's disability be submitted to the jury.

The only testimony introduced was that of the appellant himself, his mother, brother, and a friend who had a relatively slight acquaintance with him. From this testimony it appears that appellant, at the time of bringing suit, was thirty-seven years old, and that prior to his enlistment in the United States Army on June 22, 1918, resided in South Carolina and had engaged in a variety of pursuits. A short while after having been ordered to Camp Jackson near Columbia, S. C., and while pursuing his military training there, appellant became ill on the drill field with an attack of dizziness (claimed to be due to sunstroke), and had three or four similar attacks, after each of which he was treated at the camp hospital and then sent back to his company, but, being taken ill again, he was finally discharged on August 23, 1918, for "physical disability, 'psycho-neurosis and hysteria.'" His enlistment record recites that, when discharged, his physical condition rendered him unfit for general military service. Thereafter, he obtained work as a "general helper" at the Charleston Navy Yard for five or six months, which he gave up on account of illness, and he was hospitalized by the Veterans' Bureau, and subsequently sent to a sanitorium at Milledgeville, Ga., where he remained for slightly more than a year. Then he was removed to North Augusta, S. C., for further treatment, and stayed there for nearly a year, after which, with a brief interval of a few days spent in Charleston with his mother, he was sent to a vocational training school and hospital at Chick Springs, S. C., where he remained until December, 1923, receiving both medical treatment and vocational training.

As a result of his training at this institution, he was placed with Armour & Co. in Greenville, S. C., but after nine months gave up his job because of illness. Returning to Greenville, he conducted a grocery store for slightly more than a year, during which time he was confined to his bed with illness for some six weeks, and received medical treatment. He had married in 1924. Next, he appears to have traveled as a salesman in Louisiana and Arkansas, but still being handicapped by bad health, returned in a few weeks to Greensboro, N. C., and from there was sent during the year 1928, for treatment to a Veterans' Hospital in Virginia. From

that time until March, 1931, when he returned to Charleston, it appears that appellant spent the entire time as a patient at the Veterans' Hospital in Virginia, or under similar treatment in Atlanta, except for a short period of time spent in the county jail in that city, awaiting disposition of a charge upon which he was held—the facts concerning which do not appear, other than that he was given a suspended sentence and placed on probation —and except for a month or more spent in Washington, where he was also under examination by the Veterans' Bureau. From the time that he returned to Charleston until the institution of this suit he has done no work, and has complained of increased nervous condition, which is corroborated by his mother, brother, and friend. He claims to have made repeated and honest efforts to obtain employment without success, due to his nervous trouble.

From the aforegoing, it will be seen that the appellant, over a period of thirteen years, worked, in all, less than three years, and spent more than six of the thirteen years in various hospitals; also, that during this entire time the longest period that he ever remained continuously at any one occupation was the five or six months spent at the Charleston Navy Yard, if we exclude, as we probably must, the period of something more than a year when he conducted a grocery store in Greenville, S. C., because his testimony is uncontradicted that he was ill during at least part of this period, when he delegated the conduct of the store to some one else.

No medical testimony whatever having been offered, the only evidence with respect to the disability rating given appellant by the Veterans' Bureau, during the various periods when he was under its treatment and supervision, is that of the appellant himself, and this is even more fragmentary and obscure than is the testimony regarding the various changes that took place in his residence and treatment. He stated that he received from the date of his discharge, with some slight intermission, disability compensation of varying and increasing amounts.

The trial judge, in directing a verdict for the government, said: "Taking the testimony here most favorably to the plaintiff I do not think that it is such that reasonable men could draw any other conclusion except that he was not permanently and totally disabled. I don't think that there is any showing that he was permanently and totally disabled at that time. The actual facts show that this

man did work over a long period of time at a gainful occupation. Except for a period of four years he may have been partially disabled, but I don't think the evidence here shows that he is totally and permanently disabled, or ever was. I don't think there is any evidence to show that he is disabled and that he is going to remain so. From his appearance he is a perfectly able bodied man, he may have some mental disorder but it did not prevent him from working for a long time. The fact that he did not make money does not enter into the case. There has not been a single doctor to testify about his condition, not a single expert here, nothing here except to show that the man was nervous and discharged for psycho-neurosis from the army and, therefore, under the facts in this case I will have to direct a verdict for the United States."

 In considering whether a trial judge has erred in directing a verdict, we must apply the firmly established rule that the evidence must be regarded in its aspect most favorable to the opposing party; that the weight of the testimony is always for the jury to determine, and that therefore, a trial judge should not direct a verdict unless the evidence is so conclusive that were a verdict rendered for the opposing party, the court, in the exercise of a sound judicial discretion, would be compelled to set it aside. Norris v. N. Y. Life Insurance Co. (C. C. A.) 49 F.(2d) 62; South Carolina Asparagus Growers' Association v. Southern Ry. Co. (C. C. A.) 46 F.(2d) 452; Will Edwards v. U. S. (C. C. A.) 53 F.(2d) 622.

 Tested by this rule, we feel that the evidence, although meager and fragmentary, was such as to require its submission to the jury.

In Carter v. United States, 49 F.(2d) 221, we recently approved regulation 11, promulgated by the Director of the Bureau of War Risk Insurance, acting under authority of section 13, War Risk Insurance Act of 1917, as amended, 40 Stat. 555, and section 5, World War Veterans' Act, 43 Stat. 608 (38 USCA § 426). This regulation provides as follows: "Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed, in Articles III and IV, to be total disability.

" 'Total disability' shall be deemed to be 'permanent' whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it. * * *"

The question is thus twofold: First whether the insured was totally disabled in the sense that it was impossible for him to follow continuously any substantially gainful occupation; and, second, whether he was permanently disabled in the sense that his disability was reasonably certain to continue throughout his lifetime. That there was at least some evidence that cannot be entirely ignored, tending to establish both of these facts, is, we think, clear from the summary of the testimony hereinbefore given. Appellant was discharged after only two months military service, on the ground of psycho-neurosis and hysteria. Since then, and until the date of the trial, that is for thirteen years, he has worked spasmodically, the longest single period being five or six months, and the combined periods of work being less than three years. He has spent nearly six years of a thirteen-year period in various government hospitals at the instance of the Veterans' Bureau, and now, at the end of this period, he asserts that he is still unable to work, and that his condition of health is less satisfactory than when he left the Army. We therefore feel that these facts, viewed as they must be in the light most favorable to the appellant, required submission to the jury of the question of the character and extent of appellant's disability, and that therefore the trial judge erred in withdrawing the case from the jury and in directing a verdict in the government's favor.

We held in the Carter Case, supra, that the word "continuously" should be construed as meaning with reasonable regularity; and that if claimants are able to follow gainful occupations only spasmodically, with frequent interruptions due to disability, they may nevertheless be entitled to recover under the act. Similarly, on the question of whether the disability is permanent as well as total, since each case is to be put to the test of whether the conditions upon which the claim of permanency are based render it reasonably certain that the disability will continue throughout the life of the person suffering from it, it follows that it must be left to the jury to determine the probative value of such evidence as has been submitted on this question.

The facts in such cases as United States v. Harrison (C. C. A.) 49 F.(2d) 227, which have been cited to us, are obviously so distinguishable as not to require detailed com-

parison. For example, in the Harrison Case, the insured actually worked under continuous employment for a period of more than three years.

For the reasons stated, the judgment is accordingly reversed, and the cause remanded for a new trial.

Reversed.