## UNITED STATES v. ALVORD.
### No. 2769.

Circuit Court of Appeals, First Circuit.
July 7, 1933.

John Lawrence Hurley, Sp. Asst. to U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Thomas P. Shea, of Springfield, Mass. (Arthur T. Garvey and D. V. Constantinides, both of Springfield, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

■ There is real difficulty with the record in this case. The bill of exceptions is very short, and has no statement that it contains all the evidence. My brethren, however, feel that, in connection with the opinion of the District Judge, it presents the facts and the evidence with sufficient completeness so that we can safely consider the appeal; and I am content to accept their view. Crowe v. Trickey, 204 U. S. 228, 27 S. Ct. 275, 51 L. Ed. 454.

■ This is an action on two policies of war risk insurance. It was heard jury-waived. At the conclusion of the evidence, the United States moved for judgment in its favor on the ground that there was no evidence warranting a finding for the plaintiff. The motion was denied, and the defendant excepted. The District Judge found for the plaintiff. His finding has the same effect as a verdict of the jury. Maryland Casualty Co. v. Jones, 279 U. S. 792, 49 S. Ct. 484, 73 L. Ed. 960; Fleischmann Cons. Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624; St. Louis v. Western Union Tel. Co., 148 U. S. 92, 96, 13 S. Ct. 485, 37 L. Ed. 380.

The only assignment of error urged by the appellant is that there was no evidence that on or before 1 May 1919, when the policies lapsed for nonpayment of the premiums, Alvord had become totally and permanently disabled within the meaning of the policies.

There was no question as to the issuance of the policies, nor that they lapsed on the date stated for nonpayment of premiums. The evidence in its aspects most favorable to the plaintiff showed the following facts: The plaintiff enlisted in the United States Army during the war and was sent overseas. He was by occupation an automobile mechanic, and was assigned to the supply train. While serving as a volunteer litter-carrier during an engagement near Chateau-Thierry in August, 1918, he was gassed with mustard gas and was severely burned both externally and internally. The injury ended his active service. He was sent to various hospitals and invalided home. The injuries from the gas cleared up, except that he was left with chronic bronchitis or bronchial catarrh, which caused difficulty in breathing, spells of coughing, and, later, hemorrhages, some of which rendered him temporarily unable to work. His condition grew steadily worse, and in 1928 the government rated him for compensation purposes as totally and permanently disabled. The question before us, however, relates to his condition in May, 1919.

When the plaintiff was discharged from the Army on March 6, 1919, he received a rather perfunctory medical examination. It showed no disability. He then declared over his signature that he was suffering from no disability, and his discharge certificate stated that he was 0 per cent. disabled. He testified that he had been at Camp Devens for two weeks preceding his discharge and, while there, received no medical attention. In the same month that he was discharged, he went to work for the Westfield Garage and remained in their employ about a year. There was no evidence that he lost time on account of illness during this year, except his own testimony that he had to lay off for a day or more now and then on account of his disability. His associates recalled no time lost by him on account of illness. But they agreed that he had spells of coughing, shortness of breath, and hemorrhages. He then went West, and worked in Colorado, New Mexico, and Texas as a chauffeur for about a year. He received treatment during this time for his disability. He returned to Westfield in the spring of 1921. He married and took employment with an automobile company. His labor record there was produced and showed that he worked full time, with very little loss of time and some overtime, for nine months. Then he was taken ill and was out five weeks. He then returned to work and continued on practically full time for two months more. Then he was again taken ill and was out for three weeks, when he left that employment. He next went to work with a market gardener in Westfield. There are no records of his employment for a period of about four years. There is no testimony as to medical attendance during this interval, except an examination in 1923, with reference to vocational training, by a doctor who testified that the plaintiff, though suffering from

chronic bronchitis as a result of gas, was able to work and was feasible for such training. The plaintiff testified that his employment during this long period was frequently interrupted on account of his disability, but he seems to have kept at it. In the spring of 1925, against the advice of the doctor who examined him for vocational training, he again went into automobile work. In 1926 he married a second time. He retained his position on the pay roll of the automobile company, to which he went in May, 1925, until October, 1927. His employment record shows, however, that during a good deal of this period his employment was much interrupted by illness.

These are the salient facts as they appear in the bill of exceptions and the District Judge's opinion. If, on any view of them, a finding that on May 1, 1919, the plaintiff was totally and permanently disabled can be justified, the judgment must be affirmed. But we do not think such a finding can be justified in the face of the facts stated. The plaintiff held positions, in which it must be assumed that he received substantial wages, for several years at least, after his discharge from the Army. For nine months beginning April 9, 1921, his working record is before us in detail, and, as has been said, it shows practically no loss of time, what loss there is being balanced by overtime. Even if his disability made it harder for the plaintiff to carry on, the fact remains that he did carry on pretty constantly for a number of years after May 1, 1919. Many persons carry on in life under equal difficulties. To say that a person, who could do, and did do, the amount of work which the plaintiff performed following his discharge from the Army, was during that period "totally and permanently disabled," is to say something which is obviously not so, if the words be given their usual meaning. They are powerful words carrying a high content of meaning which perhaps has not always been fully recognized in cases of this character. Moreover, it is to be remembered that for four years, from the spring of 1921 to the spring of 1925, there is not a scrap of evidence, except the plaintiff's own testimony, as to his disability, and no evidence of medical attention during this period. During it the plaintiff held a working position. We think the case is governed by our recent decision in Cranshaw v. United States (opinion May 23, 1933) 65 F.(2d) 649.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.