## UNITED STATES v. BROWN.
### No. 2959.

Circuit Court of Appeals, First Circuit.
March 26, 1935.

William J. Hession, Atty., Department of Justice, of Boston, Mass. (Will G. Beardslee, Director, Bureau of War Risk Litigation, and Thomas E. Walsh, Atty., Department of Justice, both of Washington, D. C., and John D. Clifford, Jr., U. S. Atty., of Portland, Me., on the brief), for the United States.

Herbert J. Welch, of Portland, Me., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is an appeal by the United States from verdict and judgment for the plaintiff in an action upon a policy of war risk insurance. The policy was in usual form, conditioned to become payable if the insured should become totally and permanently disabled while it was in force. The only substantial question presented by the appeal is whether the government was entitled to a directed verdict in its favor.

Waterhouse, the insured, enlisted in the United States Army in 1917 and while in the service took out the policy in suit for $10,000. He was discharged from the army in February, 1919, and the policy lapsed for nonpayment in March, 1919. The plaintiff's claim is that Waterhouse was at that time totally and permanently disabled by a serious mental disease, dementia praecox. This was the question submitted to the jury on which they found in favor of the plaintiff.

A number of witnesses were called by the plaintiff who testified to Waterhouse's condition in March, 1919. The picture which they gave of him was clearly that of a person unable to carry on continuously any gainful occupation. His sister, Mrs. Lydon, testified that when Waterhouse entered the army he was in perfect health and had worked steadily; that in March, 1919, on his return from France, he was irritable and nervous; that he could not stand the slightest noise and was very moody and in a depressed condition of mind all the time; that he thought there was a smell about him and bathed every day and sometimes two or three times a day to get rid of the smell; that he took spells of wandering away, would go out in the afternoon, and they would not see him sometimes for months or weeks; that she would buy him clothes and shoes and he would come home in rags; that he had on one occasion assaulted her and she had called in the police; that her husband was a recruiting sergeant and, after talking with him, they had Waterhouse enlisted in the army; that he lived with her family in Manchester, N. H., off and on from March, 1919, until this second enlistment in July, 1920; that her stepfather, and one Pacass, ran a restaurant, and Waterhouse tried to work there washing dishes, but was unable to do the work. Mrs. Danforth, a cousin of Waterhouse, testified that she met him on the street in March, 1919, and talked with him. His conduct and his conversation, as described by the witness, was eccentric and irrational. The witness said that she again met him on the street in 1920 during his second enlistment; that he was in company with his mother. His speech and conduct on that occasion as described by the witness were irrational and peculiar. Pacass testified that he had hired Waterhouse in January, 1920, as a dish washer; that Waterhouse dropped things and was unable to do the work. Mrs. Brown, mother of Waterhouse and his guardian, testified on her direct examination that she had seen her son at Manchester in March, 1919, and that he was in a "very terrible" condition; but on cross-examination she said that she had not seen him there at that time; that in consequence of a letter which she received in West Virginia she came to Maine and found her son there, and that he was in bad shape mental-

ly; that she did not hear from him from 1917 to some time in 1919 and didn't know he was in the army. This witness further testified that in 1919 or 1920 she had a talk with her son in which reference was made to a claim which he had against the government, and he told her that if he could get some money from the government he would pay her back; that he never talked really sensibly, meaning, we understand, after he came out of the army. The testimony of this witness contained numerous contradictions and admitted inaccuracies. She is beneficiary under the policy and deeply interested.

A Red Cross worker, to whom Waterhouse applied for assistance in making out some papers in June, 1919, reported that he was working at logging and earning pretty good money as laborer, but was anxious to get his compensation; that he seemed to be "a bright appearing man."

There was no question but what Waterhouse enlisted as a private in the United States Army, Coast Artillery Corps, on July 20, 1920, and served as such until the expiration of his enlistment on September 21, 1921. His sergeant testified that Waterhouse appeared "flighty." He was punished once for striking a noncommissioned officer, but was discharged with a good character on the expiration of his enlistment and as "mentally sound." Dr. Williams, who examined Waterhouse in connection with his second enlistment in July, 1920, testified that he saw nothing in Waterhouse's condition, either physical or mental, which would prevent him from carrying on as a soldier. Dr. Clement examined Waterhouse for eye trouble in May, 1919, and observed nothing wrong with his mental condition. In March, 1922, Waterhouse entered the United States Marine hospital at Portland, Me., and remained there until April 3, 1922, when he was discharged. His case was diagnosed at that time as "constitutional psychopathic inferiorities without psychosis," which was defined as "the last degree without insanity; he would show peculiarities in his actions." In December, 1922, he was found to have dementia praecox, a serious mental disease, and was unquestionably totally and permanently disabled. Waterhouse was gassed in the war and received other slight injuries which are not important to the present discussion.

As has been said, the evidence from the plaintiff's witnesses warranted submitting to the jury the question whether Waterhouse was totally and permanently disabled in March, 1919, unless that evidence is controlled as a matter of law by the fact that he served fifteen months in the United States Coast Artillery in 1920–21. The argument for the government is that, no matter what a person's appearance and actions are, if he has the ability to serve fifteen months in the Coast Artillery, he is not totally and permanently disabled; that, "while military service differs from private employment, the standards of physical and mental fitness are certainly as high for unskilled labor in the army as in the general labor market." Courts have recognized the uncertainty of dates depending on unaided recollections after a lapse of years—in this case fourteen years—and the danger of confusing a later condition with an earlier one. Cunningham v. U. S., 67 F.(2d) 714 (C. C. A. 5), a case involving dementia praecox. It has also been held that definite proof of work done by the insured which amounted as a matter of law to following continuously a gainful occupation, precluded a finding that the insured was at the same time totally and permanently disabled. "But manifestly work performed may be such as conclusively to negative total permanent disability at the earlier time." Butler, J., Lumbra v. U. S., 290 U. S. 551 at page 560, 54 S. Ct. 272, 276, 78 L. Ed. 492, a case in which the alleged disability was due to progressive epilepsy and in which evidence resembling that offered by the plaintiff here was held to be controlled by the fact that the insured had worked for several years at gainful employments. In U. S. v. Perkins, 64 F.(2d) 243, at page 244 (C. C. A. 10) it was said: "The fact of this steady, continuous, profitable employment is an unanswerable refutation to any claim that he was totally disabled during the years of that employment. A finding that a man cannot do what he in fact did, cannot stand." McDermott, J. See, too, U. S. v. Alvord, 66 F.(2d) 455 (C. C. A. 1), certiorari denied 291 U. S. 661, 54 S. Ct. 376, 78 L. Ed. 1053; Poole v. U. S., 65 F.(2d) 795 (C. C. A. 4), certiorari denied 291 U. S. 658, 54 S. Ct. 378, 78 L. Ed. 1050; U. S. v. Hammons, 66 F.(2d) 912 (C. C. A. 10); Nalbantian v. U. S., 54 F.(2d) 63 (C. C. A. 7), certiorari denied 285 U. S. 536, 52 S. Ct. 313, 76 L. Ed. 930.

Whatever Waterhouse's conduct towards members of his family may have been, however strange or irrational his speech and actions in dealing with them, the fact remains that he did serve for fifteen

months in the United States Army, carrying on from day to day and month to month the work of a private in the Coast Artillery Corps. It seems clear that a man capable of such sustained controlled effort, and able to live and get along with other men in the close association which army life imposes, was not at that time totally and permanently disabled. The reasons which led his family and friends to induce him to go into the army on his second enlistment do not alter that fact. It may have been that the disease was beginning in the early spring of 1919, that it set up impulses of irrationality and ugliness of disposition which, where members of his own family were concerned, he did not exert himself to check, but which he could control and did control, when he came into contact with other persons. On the indisputable facts, total and permanent disability during the life of the policy was not established and a verdict for the United States should have been directed.

The judgment of the District Court is vacated, the verdict is set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion.