## CROUCH v. UNITED STATES.

District Court, N. D. West Virginia.
July 3, 1935.

Samuel T. Spears and A. E. Fiorentino, both of Elkins, W. Va., for plaintiff.

Howard Robinson, Dist. Atty., of Clarksburg, W. Va., Joseph V. Gibson, Asst. Dist. Atty., of Kingwood, W. Va., and T. P. Regan, Sp. Counsel, of Charlotte, N. C., for the United States.

BAKER, District Judge.

We have in this case a veteran sound in health upon entering the Army on September 20, 1917, and being honorably discharged therefrom on September 13, 1919, approximately two years later, having received a shrapnel wound to his right hand and possible effects of shell shock. However, the Army records introduced in evidence disclose no treatment while in service, no shell shock, nor any nervous disease, but only an attack of acute diarrhea in August, 1919. No reference is even made to the shrapnel wound to his right hand, and on the date he was discharged from the Army he signed a statement to the effect that he had no disability, injury, or wound, either mental or physical, incurred in the military service of the United States.

We have, therefore, at the start a conflict between the veteran's own statement as to what happened in service and the records of the War Department covering that service. While, of course, the signed statement of the veteran at discharge cannot be taken as conclusive against him, nevertheless it has weight because of the fact that, if true, it reflects the condition existing at the very time when the contract of insurance lapsed.

In this connection attention is invited to the case of Harrison v. United States, 42 F.(2d) 736, 737, decided by the Circuit Court of Appeals for the Tenth Circuit in August, 1930. In that case, as in the case at bar, the veteran signed a statement as to his physical condition at discharge from the service, and, commenting upon this statement, the Circuit Court of Appeals said: "Counsel for the appellant overlooked the above quoted admission, made about eight months after the alleged explosion and about seven weeks before his discharge in the United States. Appellant made no attempt to explain such statement. Appellant's testimony that he had suffered from the effects of the explosion continuously since its occurrence and his prior statement are in irrecon-

cilable conflict. Since appellant was a party to the action, this statement not only impeached him but it constituted substantive evidence against him. Jones, Commentaries on Evidence (6th Ed.) §§ 2412, 2414."

So that right here we have the unsupported evidence as to his disability at discharge from the service. It seems almost impossible to conceive of the veteran having a shrapnel wound to his right hand of such a character as he testified to going untreated, or at least without some record among the War Department's records of this man's physical condition at discharge. On the question of shell shock or a state of mind following the rigors of war, this may well be true, and there would be no medical record with respect to treatment thereof.

Within a few days, or at least not over a month after his discharge from service, the veteran, according to the testimony of disinterested witnesses and his family particularly, began acting strangely and wandering around in a manner totally different to his conduct before entering the service. This would appear to be significant of some mental disorder which may, or may not, have been brought about by his military service. The medical testimony offered in support of this, however, does not throw much light upon what his trouble was, but only goes to the observation and the fact that he apparently seemed unable to carry on a livelihood. Is it not strange that, if this condition existed at discharge and all the years subsequent thereto, no attempt has been made by any one to adjudge this veteran incompetent or unable to handle his affairs? The record is silent with respect to any judicial determination, and we find the veteran in his own right bringing this cause of action, attending court, and testifying in his own behalf with a marked degree of memory with respect to what happened while in service and down to the time of the trial. It seems impossible to reconcile this with the idea of permanent and total disability from a mental condition.

▉ With respect to the work which the veteran has attempted to do since his discharge from service, the statements of the witnesses seem to be more to the effect that he tried to work rather than to what he actually did. No one stated what the veteran's efforts were, if at all,

with the exception of the two lines of work he tried to do, namely, farming and roadwork, to do any other kinds of work of the many lines of work, either heavy or light in character, which he may be fitted to do. Because a man does not work does not mean that he is permanently and totally disabled, and the fact that he has not been able to work at farming or roadwork of the character that he did does not mean that he is permanently and totally disabled, unless it can be shown that he has made an effort to do other kinds of work, even though light in character, and failed in those attempts. The testimony was to the effect that he got through some of the primary grades of school, possibly the seventh or eighth grade, and that before entering the service he was bright, and a hard worker.

In the two lines of work that he did at different intervals, no one came forward and stated, with any degree of certainty, that he could not do the work, except that some of the work was too hard for him and that it was of a short duration. The government, on the other hand, produced pay roll records to show that in either 1928 or 1930 he was working at roadwork, and also proved that the veteran carried on farming at different intervals after his discharge from service. Of course, in this case, the work record is intermittent; nevertheless the ability to work manifested itself at different intervals and showed the veteran was able to get away from himself, or get out of the mental state or condition he was in, to work.

▉ In this case, as in all cases, the burden is upon the plaintiff to establish that he was permanently and totally disabled within the meaning of his policy in 1919, or during the lifetime of the contract, but the fact that he has never been adjudged insane or incompetent, but has at different times been able to work, showed that he himself did not think he was permanently and totally disabled, nor did the physicians who treated him or his family think so. If this veteran were in the condition in 1919 he is in to-day, certainly he would have reached such a stage as to be unable to be present at the trial and testify in his own behalf as he did. A committee or guardian would have been appointed to bring this cause of action or assert the proposition that the veteran was permanently and to-

tally disabled during the lifetime of the insurance in effect at the date of the veteran's discharge from the military service.

The evidence in this case would indicate a person under a mental strain who will not submit to suggestions or get away from himself and apply himself to some kind of work. The physical disability is negligible in considering permanent and total disability, and the courts are filled with decisions that a one-armed or one-legged person, or a person suffering from a defective leg or arm, can work and is not permanently and totally disabled. In this connection, attention is invited to the case of United States v. Algie Thomas, 53 F.(2d) 192 (C. C. A. 4th).

Narrowed right down, therefore, to the question involved, we have only the testimony of the veteran himself as to what happened to him while in the military service, and, according to his own statement, he certainly was not permanently and totally disabled prior to his discharge from the Army. It can hardly be said, therefore, that within thirty days thereafter the veteran showed such a state of mental breakdown as to be permanently and totally disabled. Surely the way in which he conducted himself, as testified to by various witnesses, did not develop until some time after his discharge from service, and most of the testimony is to the effect that from two to three months after his discharge his principal disability was the condition of his right hand, which, if you will, may be attributed to military service, although the War Department records seem to refute that proposition.

The conduct of the veteran himself in not bringing his claim to the attention of the courts until fourteen or fifteen years after his discharge from service would show that he did not consider himself permanently and totally disabled. The fact also that no one attempted during all those years to have him adjudged incompetent or insane, and the testimony adduced at the trial of this case, all lead to the conclusion that the veteran was not permanently and totally disabled during the life of his policy. The long delay in bringing the action, as decided in the Lumbra Case, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492, by the Supreme Court of the United States, should be taken as strong evidence that he was not permanently and totally disabled before his policy of insurance lapsed. While there is in the record some evidence attempting to explain and justify the delay in bringing the action, it does not seem to be clear and satisfactory. Lumbra v. U. S., 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492; United States v. Spaulding, 293 U. S. 498, 55 S. Ct. 273, 79 L. Ed. 617; Miller v. U. S., 294 U. S. 435, 55 S. Ct. 440, 79 L. Ed. 977, decided by Supreme Court March 4, 1935; United States v. Smith, 76 F.(2d) 850 (C. C. A. 4th).

In this connection, attention is invited to the case of United States v. Eleanor Brown, 76 F.(2d) 352, 353, decided by the Circuit Court of Appeals for the First Circuit on March 26th of this year. In that case the court said: "Whatever Waterhouse's conduct towards members of his family may have been, however strange or irrational his speech and actions in dealing with them, the fact remains that he did serve for fifteen months in the United States Army, carrying on from day to day and month to month the work of a private in the Coast Artillery Corps. It seems clear that a man capable of such sustained controlled effort, and able to live and get along with other men in the close association which army life imposes, was not at that time totally and permanently disabled. The reasons which led his family and friends to induce him to go into the army on his second enlistment do not alter that fact. It may have been that the disease was beginning in the early spring of 1919, that it set up impulses of irrationality and ugliness of disposition which, where members of his own family were concerned, he did not exert himself to check, but which he could control and did control, when he came into contact with other persons. On the indisputable facts, total and permanent disability during the life of the policy was not established and a verdict for the United States should have been directed."

See, also, the cases of John R. Jones by J. Z. Jones, Guardian, v. United States (C. C. A.) 55 F.(2d) 574, and United States v. Kiles (C. C. A.) 70 F.(2d) 880. Also United States v. McCoy (C. C. A.) 73 F.(2d) 786; Grant v. United States (C. C. A.) 74 F.(2d) 302, and United States v. Hodges (C. C. A.) 74 F.(2d) 617; Garrison v. U. S. (C. C. A.) 62 F.(2d) 41.

From the facts and law governing this case I am driven to the conclusion that plaintiff did not become totally and permanently disabled, within the meaning of the policy in question, while it was in force. Order may go accordingly.