## UNITED STATES v. ANDERSEN.
### No. 3208.

Circuit Court of Appeals, First Circuit.

Feb. 12, 1937.

William J. Hession, Area Atty., and by Timothy A. Curtin, Asst. U. S. Atty., both of Boston, Mass. (Francis J. W. Ford, U. S. Atty., of Boston, Mass., and Julius C. Martin, Wilbur C. Pickett, and Thomas E. Walsh, all of Washington, D. C., on the brief), for the United States.

Albert Hurwitz, of Boston, Mass. (A. T. Handverger, of Franklin, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is an appeal by the United States against a verdict and judgment for the plaintiff in an action on a war risk insurance policy. We shall refer to the parties, plaintiff and defendant, as they appeared in the trial court. The plaintiff enlisted in the Navy on June 20, 1918, and was discharged on December 21, 1918. He took out a $10,000 policy of war risk insurance which lapsed on March 2, 1919. The sole question is whether there was any evidence that he was totally and permanently disabled before that date.

The plaintiff's evidence showed the following facts: In September, 1918, while still in the service he had an attack of influenza which was followed by an attack of encephalitis lethargica. When he returned home on his discharge he was seriously ill. His illness continued in an acute form during which he was totally incapacitated for a year or eighteen months. By July, 1921, he had sufficiently recovered to undertake vocational training as a salesman, receiving pay from the government while so doing. In 1922, he had two or three jobs as a salesman, keeping each one only a few weeks or few months. On one of these jobs he drove a Ford truck. The testimony is that he found any work exhausting and became very tired, nervous, and twitchy. In 1923 he worked as a salesman for the Armstrong Knitting Mills and kept that position until the fall of that year when he and his wife went to Chicago. Later that fall he obtained a position as salesman for the Colson Company in Chicago selling hospital equipment and supplies. After a short time the Colson Company sent him to Kansas City as its representative, and he stayed there in that capacity until 1927, a period of four years. While in Kansas City he drove an automobile in connection with his work. In 1927 the Colson Company transferred him to Atlanta, Ga., where he remained until July, 1928. From Atlanta the Colson Company sent him to Louisville, Ky., where he stayed a month and a half. Later that year he was transferred to Cincinnati; and from Cincinnati he was transferred to Boston. He worked for the Colson Company until November, 1928—a period of five years continuously.

After getting through with the Colson Company in Boston in November, 1928, he went to work for the Fairbanks Company at a salary of $40 per week; but he kept the place only a few months. Since leaving the Fairbanks Company in the spring of 1929 the plaintiff has done no regular work with substantial pay, and since 1929 has been rated for compensation purposes as totally and permanently disabled.

As to his health during the five years when he was working for the Colson Company, his wife testified, "That from the time he started to work for the Colson Company until he got through with them his condition was just the same." At sev-

eral of the places where he was stationed, he was in contact with physicians of the Veterans Bureau and was under treatment from time to time. While living at Kansas City he made yearly trips to Omaha, Neb., alone by train, being absent on each trip about two weeks. Since his return to Boston his condition has remained about the same. One of his witnesses testified that after the plaintiff left for the West she never saw him until he returned to Boston in 1928 or 1929 when she saw him in the summertime of one of those years. That after his return to Boston in 1928 or 1929, his condition was just the same. "He had constant twitching and his eyes never regained the proper focus. That although his leg and arm were to a degree better, they were never totally better as far as she could observe; * * * his condition *today* [italics supplied] as compared with the time he came back from Chicago is not as good." Many witnesses who had met the plaintiff in a business way while he was working for the Colson Company testified that he seemed to be in a nervous condition, and was twitching, and became easily fatigued.

The medical witnesses agreed that the plaintiff was suffering from encephalitis lethargica, a disease characterized by a severe onset, which proves fatal to a considerable proportion of those attacked. If the patient survives the first attack he partially recovers and the disease takes on a chronic form. In its chronic form it is slowly progressive, and the prognosis is unfavorable.

Andersen's earnings were as follows:

| Year | Year Total |
|---|---|
| 1924 | $2880.00 |
| 1925 | 3005.10 |
| 1926 | 3360.00 |
| 1927 | 3600.00 |
| 1928 | 3696.17 |
| 1929 to 15 March | 750.00 |
| Total | $17291.27 |

The average is about $3,300 a year. There is evidence that the plaintiff worked during this period under great handicaps of nervousness, eye trouble, and fatigue. But the inescapable facts show that he did work and work successfully, without being injured by so doing. In an application to reinstate his insurance dated June 30, 1926, Andersen explicitly stated that he was not at that time permanently and totally disabled. This answer in connection with the long time which was permitted to elapse before suit on the policy was begun—more than ten years—strongly suggests, as was said in Lumbra v. United States, 290 U.S. 551, at page 560, 54 S.Ct. 272, 78 L.Ed. 492, on somewhat similar facts, that the present claim is an afterthought.

The picture presented by the plaintiff's evidence is clear and definite. It is that of a courageous man who was for a time totally disabled by critical illness, who recovered so far that he was able to work and did work continuously for about five years in a responsible position carrying a substantial salary, and who then, probably because of the progress of his disease, ceased to work. "While, in a sense, each case must rest on its own bottom, it is desirable that the same general rules be applied to all veterans." United States v. Flippence (C.C.A.) 72 F.(2d) 611, at page 613. "It is to be presumed that any appreciable degree of disability is attended by discomfort, pain, or, at least, by inconvenience and handicap in the discharge of the normal activities of life. If such conditions are to be deemed sufficient to warrant recovery under the terms of a war risk policy, then the precision with which the degree of disability, necessary for such recovery, has been defined was wholly unnecessary." Van Valkenburgh, J., United States v. Harth (C.C.A.) 61 F.(2d) 541, at page 546. We think the present case comes within Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617; United States v. Alvord (C.C.A.) 66 F.(2d) 455, and United States v. Brown (C.C.A.) 76 F.(2d) 352. On the plaintiff's evidence a finding of total and permanent disability at the lapse of the policy was not warranted, and a verdict for the defendant should have been directed.

The judgment of the District Court is vacated, the verdict set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion.