## UNITED STATES v. COTE.
### No. 3311.

Circuit Court of Appeals, First Circuit.
Feb. 15, 1938.

Keith L. Seegmiller, of Washington, D. C., and William J. Hession and Timothy A. Curtin, Attys., Department of Justice, both of Boston, Mass. (Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Young M. Smith, Atty., Department of Justice, of Washington, D. C., and Francis J. W. Ford, U. S. Atty., of Boston, Mass., on the brief), for the United States.

James H. Walsh, Jr., of Fitchburg, Mass., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is an action on a war risk insurance policy. The District Judge submitted the case to a jury which returned a verdict for the plaintiff, with a special finding that the plaintiff became permanently and totally disabled on October 11, 1918. The principal question presented by this appeal is whether the defendant was entitled to a directed verdict.

The plaintiff enlisted in the Navy in August, 1918, and was honorably discharged in December of the same year, having served two and one-half months. He took out a policy of war risk insurance which took effect on September 25, 1918, and expired (including the grace period) on March 2, 1919. The present suit was instituted on June 5, 1935, about sixteen years and three months after the termination of the insurance. The plaintiff now asserts that during this whole period he has been totally and permanently disabled.

Undisputed evidence showed the following facts: The petitioner was discharged from military service, as has been said, on December 10, 1918. Beginning in the latter part of the same month he went to work at his prewar occupation in the factory of the New Home Sewing Machine Company, and he worked there the rest of that year and all but about 2 weeks of the following year. During the year 1919 his weekly wages were strikingly regular, about $20 per week, and amounted to $1,044.81. In October, 1920, he married, and up to the time of trial had had nine children. In 1921 he applied for and obtained vocational training, carrying on part of it at the Sewing Machine Company. This vocational work was continued from February, 1921, until July, 1922, a year and five months. In March, 1923, he resumed vocational training in poultry farming, and in April, 1923, as an electrician, which he continued without interruption until December 31, 1925, two and a half years, when he was declared rehabilitated. Beginning January, 1926, and continuing without interruption until July, 1927, about eighteen months, he worked at his old employment at the Sewing Machine Company and earned according to its payrolls $2,174. The work records covering the period from July, 1927, until the factory closed in 1930 have been destroyed, but the plaintiff appears to have been working in the factory during all that time. From March, 1934 until June, 1935, he worked regularly as a laborer on emergency relief projects; he then operated a small second-hand furniture store; and from January, 1936, until February, 1937, twelve months—during which period he was prosecuting this suit on the claim that he was totally and permanently disabled—he worked as a laborer on PWA projects. There was medical evidence that during this entire period he was permanently and totally disabled. With what signification as applied to the plaintiff that expression may have been used does not appear. But it is abundantly certain that it was not used in the sense in which it is used in ordinary speech, or in the policy in suit.

In Lumbra v. United States, 290 U.S. 551, at page 561, 54 S.Ct. 272, 276, 78 L.Ed. 492, it was said that, "in the absence of clear and satisfactory evidence explaining, excusing, or justifying it, petitioner's long delay before bringing suit is to be taken as strong evidence that he was not totally and permanently disabled before the policy lapsed." Butler, J.

In United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 276, 79 L.Ed. 617, it was said that plaintiff's failure to sue for nearly nine years "strongly suggests that he had not suffered total permanent disability covered by the policy." To the same effect in Miller v. United States, 294 U.S. 435, at page 441, 55 S.Ct. 440, 442, 79 L.Ed. 977, "His long delay before bringing suit is wholly incompatible with a belief on his part that he was totally and permanent-

ly disabled during the period while his policy was in force. * * * If petitioner thought himself totally and permanently disabled, it is difficult to understand why he waited tweve years before attempting to assert his rights." Sutherland, J.

The undisputed facts give point to these quotations. To summarize: During the year following the plaintiff's discharge from service he worked almost steadily at his prewar occupation and earned more than $1,000; the next year he married; he was then employed more than four years in vocational training, at the end of which he was declared rehabilitated; following which he worked uninterruptedly eighteen months at his prewar employment and earned nearly $2,174. "Manifestly work performed may be such as conclusively to negative total permanent disability at the earlier time." Butler, J., Lumbra. v. United States, 290 U.S. 551, 560, 54 S.Ct. 272, 276, 78 L.Ed. 492. It does so in the present case. See, too, United States v. Andersen, 1 Cir., 88 F.2d 291; United States v. Alvord, 1 Cir., 66 F.2d 455, cert. denied, 291 U.S. 661, 54 S.Ct. 376, 78 L.Ed. 1053; United States v. Brown, 1 Cir., 76 F.2d 352; United States v. McGrory, 1 Cir., 63 F.2d 697, cert. denied, 289 U.S. 742, 53 S.Ct. 692, 77 L.Ed. 1489, and many others.

The judgment of the District Court is reversed, the verdict is set aside and the case is remanded to that court for a new trial.