## UNITED STATES v. CLEMENTS.
### No. 6955.

United States Court of Appeals for the District of Columbia.

Argued Jan. 17, 1938.

Decided March 7, 1938.

Leslie C. Garnett, U. S. Atty., and Walter M. Shea, Young M. Smith, and Thomas E. Walsh, all of Washington, D. C., for the United States.

Warren E. Miller, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

GRONER, C. J.

An appeal to review a judgment in favor of plaintiff (appellee) on a contract of war risk term insurance.

The case was tried to the jury, and the government's motion for a directed verdict was denied. The trial judge ruled that there was sufficient evidence of total permanent disability to take the case to the jury. There is no other question in the case.

Plaintiff's military service extended from July 31, 1917, to May 19, 1919. The issue submitted to the jury was whether or not plaintiff became totally and permanently disabled on April 6, 1921, when under a stipulation the policy was deemed to be in force.[1] Plaintiff's employments and hospitalizations both before and after the decisive date are shown by the evidence. In substance it shows that plaintiff during his military service was treated for colds, grippe, influenza, and a broken collar bone, and also for pneumonia and severe pains in his back, chest, and stomach. Prior to and at the time of his discharge he suffered from sores over his face, lost the most of his hair, was nervous, coughed considerably, and suffered from vomiting spells. During this period he was in military hospitals for muscular rheumatism, bronchitis, rheumatic fever, and pneumonia. The usual examination on his discharge showed him physically sound. After his discharge he obtained employment as a chauffeur in the United States Shipping Board and worked there in May and in June, 1919, and during a part of the same time worked also as a temporary clerk in the Bureau of War Risk Insurance, the total period being approximately five months for which he received a little more than $400. From October, 1919, to March, 1920, he was a mechanic in the Motor Transport Corps on duty at the Bureau of Standards and received the sum of $654 for this work. From May, 1920, to Octo-

[1] Section 305, as amended, World War Veterans' Act 1924, 43 Stat. 607, 626, 38 U.S.C.A. § 516.

ber, 1920, he drove a taxicab for a public taxicab company, earning daily wages ranging between $2 and $4. He also during a part of this time drove a truck and a sight-seeing bus.

From October, 1920, to September, 1925, he was carried as a vocational student. His early training was in bookkeeping, but later he transferred to typewriter repair work. During this five-year period he was hospitalized at various times aggregating a little less than eight months. Most of the time the diagnosis showed pulmonary tuberculosis, sometimes active, sometimes arrested. During all this time plaintiff received monthly training pay, aggregating above $6,000, and except when he was in the hospital he was at work, some of the time as a taxi driver, some as a private chauffeur, and some as repairman. After his training period ended in 1925 he continued to work, with short intervals between, until the latter part of 1930. His work included that of bus driver, guard, and truck driver in the Washington Park Service, storekeeper in the filtration plant, etc. Since the latter part of 1930 he has been receiving $110 per month from the government as veteran compensation. Between 1918 and 1930 plaintiff received in training pay, wages, and salaries in excess of $14,000, and as compensation from the government more than $10,000 additional. In two of the positions held—one with the Washington Electric Railway Company in 1926 and the other with the Bureau of Public Buildings and Parks in 1927—plaintiff was accepted only after physical examinations by physicians, and these showed that he was able to do the manual labor involved in the employment. While in the employ of the railway company plaintiff missed only three calls to duty in seven months, and while working in the filtration plant he was absent 13 days in nine months. Since 1930, plaintiff testified, he had done some work for wages but had not held a regular position or pursued a regular employment and was not able to do so; that at the time of the trial there was some improvement in his condition compared to his condition in April, 1921, but that he was more nervous now than then.

We think the trial court should have directed a verdict for the United States. Gunning v. Cooley, 281 U.S. 90, 93, 50 S.Ct. 231, 232, 74 L.Ed. 720. Perhaps we might have reached a different conclusion if the case had been tried between 1920 and 1934, for it was not until the latter date that the Supreme Court had occasion to review and construe the form of insurance contract involved in this case. In 1918 the Director of the Bureau of War Risk Insurance had ruled that "any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed * * * to be total disability," and the courts, generally speaking, had construed the rule literally and liberally; but in the Lumbra v. U. S. Case, 290 U.S. 551, at page 560, 54 S.Ct. 272, 276, 78 L.Ed. 492, the Supreme Court held this liberal construction of the contract unreasonable and contrary to the intention of Congress, and said that "permanent disability" means that which is continuing as opposed to what is temporary, and that separate and distinct periods of temporary disability do not constitute that which is "permanent." In the Lumbra Case the plaintiff, contrary to the opinion of physicians that he was unable to do work, did in fact work for substantial pay more than five years out of the ten following the lapse of the policy, and this was held by the Supreme Court sufficient to justify a directed verdict for the government. Following the Lumbra Case, the court in Spaulding's case, U. S. v. Spaulding, 293 U. S. 498, 55 S.Ct. 273, 79 L.Ed. 617, again held that the holder of a policy, who during the larger part of more than eight years between the lapse and the commencement of the suit was able to work and did work for pay, was not entitled to recover. In the latter case the Supreme Court said (293 U.S. 498, at page 504, 55 S.Ct. 273, 276, 79 L.Ed. 617): "The terms of the contract of insurance are in accordance with section 400, art. IV, Act of October 6, 1917, 40 Stat. 409, and extend only to death and total permanent disability occurring while it is in force whether during or after termination of the service of the insured. The policy does not cover total temporary disability or partial permanent disability, and does not authorize or permit any payment for physical or mental impairment that is less than 'total permanent disability.' Periods of total temporary disability, though likely to recur at intervals, do not constitute the disability covered by the policy, for 'permanent' means that which is continuing as contrasted with that which is 'temporary.'"

The evidence in this case shows unmistakably that prior to and after the lapse of

the policy plaintiff had tuberculosis. For a part of the time it was active, for a part of the time it was arrested or healed, but both prior to and after the lapse date plaintiff was able to work and did work by far the greater portion of each year and received compensation as any other employee having similar duties. In these circumstances we adopt the language of the First Circuit in United States v. Alvord, 66 F.2d 455, 457, viz.: "To say that a person, who could do, and did do, the amount of work which the plaintiff performed following his discharge from the Army, was during that period 'totally and permanently disabled,' is to say something which is obviously not so, if the words be given their usual meaning."

The same question as is here involved has been so frequently passed on and the rule announced by the Supreme Court applied by us and the other circuits,[2] in circumstances so nearly like those shown here, that it is both unnecessary and undesirable to prolong the opinion.

Reversed and remanded for a new trial in accordance with this opinion.

STEPHENS, Associate Justice, dissents.

[2] Franklin v. United States, 64 App. D.C. 15, 73 F.2d 655; United States v. Pfaff, 4 Cir., 93 F.2d 823, decided January 4, 1938; United States v. Diehl, 4 Cir., 62 F.2d 343; United States v. Harrison, 4 Cir., 49 F.2d 227; Nalbantian v. United States, 7 Cir., 54 F.2d 63, certiorari denied 285 U.S. 536, 52 S.Ct. 313, 76 L.Ed. 930; United States v. Linkhart, 7 Cir., 64 F.2d 747; Nicolay v. United States, 10 Cir., 51 F.2d 170; United States v. Bishop, 6 Cir., 90 F. 2d 65; United States v. Gwin, 6 Cir., 68 F.2d 124; Mason v. United States, 2 Cir., 63 F.2d 791.